# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

UNPUBLISHED
March 16, 2017

v

JEROME ROMEY SUEING,

Defendant-Appellant.

No. 329961
Kent Circuit Court
LC Nos. 15-000819-FH;
15-000820-FH

Before: STEPHENS, P.J., and SHAPIRO and GADOLA, JJ.

PER CURIAM.

In lower court no. 15-000819-FH, defendant was charged with aggravated indecent exposure, MCL 750.335a(2)(b), and indecent exposure by a sexually delinquent person, MCL 750.335a(2)(c) in connection with an incident in which defendant exposed his penis and began masturbating while sitting at a table near a woman at the Grand Rapids Downtown Market on January 9, 2015. In lower court no. 15-000820-FH, defendant was charged with aggravated indecent exposure and indecent exposure by a sexually delinquent person in connection with an incident in which defendant exposed and then began "stroking" his penis while sitting next to a woman in a lobby at Kendall College of Art and Design in Grand Rapids on January 12, 2015. The trial court consolidated the two cases for a single trial. The judgments of sentence reflect that, in each case, defendant was convicted by a jury of aggravated indecent exposure and indecent exposure by a sexually delinquent person, MCL 750.335a(2)(b) and (c). The trial court sentenced defendant as a fourth-offense habitual offender, MCL 769.12, to concurrent sentences of 24 months to 15 years' imprisonment for the aggravated indecent exposure convictions and 20 to 40 years' imprisonment for the indecent exposure by a sexually delinquent person convictions. Defendant appeals as of right. We vacate defendant's convictions and sentences for aggravated indecent exposure, affirm his convictions for indecent exposure by a sexually delinquent person, but vacate his sentences associated with these two convictions and remand so the trial court can resentence defendant consistent with MCL 750.335a(2)(c) to one day to life in prison.

## I. JOINDER

On appeal, defendant first argues that the trial court erred by joining the two cases for trial. Questions of joinder present mixed questions of fact and law. *People v Gaines*, 306 Mich App 289, 304; 856 NW2d 222 (2014). "To determine whether joinder is permissible, a trial court must first find the relevant facts and then must decide whether those facts constitute

'related' offenses for which joinder is appropriate." *Id.* (quotation marks and citation omitted). We review a trial court's factual findings for clear error and review questions of law de novo. *Id.* The ultimate decision of whether to permissively join related charges, however, lies firmly within the discretion of the trial court. *Id.* A trial court abuses its discretion when its decision falls outside the range of reasonable and principled outcomes. *People v Duenaz*, 306 Mich App 85, 90; 854 NW2d 531 (2014).

Two or more informations against a single defendant may be consolidated for a single trial. MCR 6.120(A). MCR 6.120(B) provides in pertinent part the following:

> On its own initiative, the motion of a party, or the stipulation of all parties, except as provided in subrule (C), the court may join offenses charged in two or more informations or indictments against a single defendant . . . when appropriate to promote fairness to the parties and a fair determination of the defendant's guilt or innocence of each offense.
>
> (1) Joinder is appropriate if the offenses are related. For purposes of this rule, offenses are related if they are based on
>
> (a) the same conduct or transaction, or
>
> (b) a series of connected acts, or
>
> (c) a series of acts constituting parts of a single scheme or plan.
>
> (2) Other relevant factors include the timeliness of the motion, the drain on the parties' resources, the potential for confusion or prejudice stemming from either the number of charges or the complexity or nature of the evidence, the potential for harassment, the convenience of witnesses, and the parties' readiness for trial.

On a defendant's motion, a trial court must sever offenses that are unrelated for separate trials. MCR 6.120(C).

Defendant argues that offenses are not "related" simply because they are of the same or similar character, *People v Williams*, 483 Mich 226, 235, 234 n 6; 769 NW2d 605 (2009), and his two offenses were not "related" under MCR 6.120(B)(1). We disagree. For each offense, defendant went to a gathering area in a public place. He then sat down near a young woman, pulled his penis out of his pants, and rubbed it. While the offenses were of the same character, they were also acts constituting parts of a single scheme or plan. See MCR 6.120(B)(1)(c). The offenses were acts in defendant's scheme of using unsuspecting young women, who were in a gathering area of a public place, to obtain sexual gratification. Accordingly, the charged offenses were "related" under MCR 6.120(B)(1).

Further, the trial court did not abuse its discretion by ultimately deciding to consolidate the two cases for trial. The facts of the two offenses were not complex and presented minimal potential for confusion. Also, evidence of each offense would have been admissible under MRE 404(b) in a trial on the other offense to prove defendant's identity and that he had a common

-2-

scheme, plan, or system of doing the acts.  See *People v Sabin (After Remand)*, 463 Mich 43, 63; 614 NW2d 888 (2000); *People v Ho*, 231 Mich App 178, 186; 585 NW2d 357 (1988). Consolidating the cases reduced the drain on resources and offered convenience for the witnesses.  Under these facts, the trial court's decision to consolidate the two cases for trial did not fall outside the range of reasonable and principled outcomes.

Defendant also argues that the trial court erred by denying his request for a separate jury on the charges of indecent exposure by a sexually delinquent person.  We disagree.  In *People v Breidenbach*, 489 Mich 1, 3-4, 8; 798 NW2d 738 (2011), the Michigan Supreme Court reversed its decision in *People v Helzer*, 404 Mich 410; 273 NW2d 44 (1978), and held that, under MCL 767.61a, a defendant is not entitled to have separate juries decide the issue of sexual delinquency apart from a primary offense.  According to the Supreme Court, MCR 6.120(B) provides the proper framework for courts to determine whether a separate jury should be empaneled to decide a sexual delinquency charge.  *Breidenbach*, 489 Mich at 14.  The Court explained as follows:

> [I]f a fair determination of a defendant's guilt or innocence of each offense would require separate juries, trial courts may order separate juries . . . .  In accordance with the rationale supporting the *Helzer* Court's original holding, the potential for confusion or prejudice in particular may provide a sufficient basis for a trial court's exercise of its discretion to order separate juries when a charge of sexual delinquency is involved.  When that potential does not exist, however, separate juries need not be empaneled in order to consider separately the charges against a defendant.  [*Id.* at 14-15 (quotation marks omitted).]

As already discussed, the two cases were properly joined for trial.  Further, as will be discussed in Section II of this opinion, evidence of defendant's earlier acts of sexual impropriety, occurring at a Biggby Coffee in January 2014 and a Common Ground coffee shop in October 2004, was admissible under MRE 404(b) at trial on the charged offenses.  Defendant does not argue that a jury deciding his sexual delinquency charges could not have heard this evidence.  If separate juries had been used, there would have been a complete overlap in evidence.  Because the evidence overlapped, the jury did not have to limit its use of any of the evidence presented at trial to separately determine if the charged offenses occurred or if defendant was a sexually delinquent person.  Accordingly, there was no potential for confusion or prejudice, and the trial court did not abuse its discretion by denying defendant's request for a separate jury on the sexual delinquency charges.

## II.  OTHER-ACTS EVIDENCE

Defendant next argues that the trial court improperly admitted evidence of his previous acts of sexual impropriety that occurred at a Biggby Coffee in January 2014, and at a Common Ground coffee shop in October 2004.  We review a trial court's evidentiary decisions for an abuse of discretion.  *People v Unger*, 278 Mich App 210, 216; 749 NW2d 272 (2008).

MRE 404(b)(1) provides that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." However, such evidence may be admissible for another purpose, such as to prove "motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, or

absence of mistake or accident when the same is material . . . ." *Id.* Three requirements must be met for other-acts evidence to be admissible. *People v Knox*, 469 Mich 502, 509; 674 NW2d 366 (2004). First, the evidence must be offered for a proper purpose, which is any purpose other than to show the defendant's action in conformity therewith. *Id.* Second, the evidence must be relevant under MRE 402 to an issue that is of consequence at trial. *Id.* Third, the probative value of the evidence must not be substantially outweighed by the danger of unfair prejudice. *Id.*, citing MRE 403. Unfair prejudice exists if there is a tendency that evidence with little probative value will be given undue weight by a jury. *People v McGhee*, 268 Mich App 600, 614; 709 NW2d 595 (2005).

We reject defendant's argument that evidence of the Biggby Coffee incident was inadmissible because it did not include any act of aggravated indecent exposure. Even if defendant's conduct at the Biggby Coffee did not constitute a crime, this fact does not mean that evidence of the incident was inadmissible as other-acts evidence. MRE 404(b)(1) specifically provides that "[e]vidence of other crimes, wrongs, *or acts* . . . may . . . be admissible for" purposes other than to prove the defendant's character. (Emphasis added.) We also reject defendant's argument that evidence of the Common Ground incident was inadmissible due to its age. "The remoteness of an act only affects the weight of the evidence rather than its admissibility." *McGhee*, 268 Mich App at 611-612. Accordingly, the fact that the Common Ground incident occurred 11 years before the charged offenses did not preclude its admission.

All elements of a charged offense are "at issue" when a defendant pleads not guilty. *People v Crawford*, 458 Mich 376, 389; 582 NW2d 785 (1998). The prosecution must prove each element beyond a reasonable doubt, regardless of whether the defendant specifically disputes or offers to stipulate to any of the elements. *Id.* Identity is an element of every offense. *People v Yost*, 278 Mich App 341, 356; 749 NW2d 753 (2008).

In this case, the other-acts evidence was admissible to prove defendant's common scheme, plan, or system of doing an act pursuant to MRE 404(b)(1). Other-acts evidence is relevant to show that the charged offense occurred when the other act and the charged offense are sufficiently similar to support an inference that they are manifestations of a common scheme, plan, or system. *Sabin (After Remand)*, 463 Mich at 63. Regarding the Biggby Coffee incident, Hanali Gilbert testified that defendant sat down at a table near her and her friend. Gilbert then saw defendant "rubbing" himself near his penis; she used the word "masturbating" to describe his conduct. Gilbert testified that she did not see defendant's penis, but his hand was in his pants. Regarding the Common Ground incident, Justine Bandstra testified that defendant sat at a table near her and her friend. When Bandstra looked over at defendant, she saw that defendant had removed his penis from his pants and he was "stroking" it with an "up and down" motion. The Biggby Coffee incident and the Common Ground incident were sufficiently similar to the charged offenses to support an inference that they and the charged offenses were manifestations of a common plan, scheme, or system in doing an act. In the two incidents, as in the charged offenses, while in a public area where people could gather, defendant sat down near a young woman and masturbated. Additionally, because evidence of the incidents was highly probative to the issue of whether the charged offenses occurred, the risk of unfair prejudice did not substantially outweigh the probative value of the evidence.

Moreover, evidence of the Biggby Coffee incident and the Common Ground incident was admissible to prove defendant's identity as the perpetrator of the charged offenses. Other-acts evidence is relevant to prove identity if (1) there is substantial evidence that the defendant committed the other act, (2) there is some special quality of the act that tends to prove the defendant's identity, (3) the evidence is material to the defendant's guilt, and (4) the probative value of the other-acts evidence is not substantially outweighed by the danger of unfair prejudice. *Ho*, 231 Mich App at 186.

Regarding the Biggby Coffee incident, there was substantial evidence that defendant was the man who Gilbert saw rubbing himself. At trial, Gilbert identified the man as defendant. Further, there was some special quality of the act that tended to prove defendant's identity. Although there was no testimony that defendant exposed his penis in the Biggby Coffee incident, Gilbert's testimony established that, just as in the charged offenses, defendant sat at a table near a young woman in a public place and rubbed himself for sexual gratification. Regarding the Common Ground incident, there was substantial evidence that defendant was the man who exposed himself. At trial, Bandstra identified the man who exposed himself as defendant. She also testified that, during a 2005 trial, she identified defendant as the man who exposed himself. Further, there was some special quality of the act that tended to prove defendant's identity. In the Common Ground incident, like the charged offenses, defendant sat at a table near a young woman in a public place, took his penis out of his pants, and rubbed it. The charged offenses were so nearly identical in method as the Common Ground incident and the Biggby Coffee incident as to demonstrate that defendant was responsible for the offenses. See *People v Golochowicz*, 413 Mich 298, 311; 319 NW2d 518 (1982). Because identity is an element of every offense, *Yost*, 278 Mich App at 356, evidence of the Biggby Coffee incident and the Common Ground incident was material to defendant's guilt. Finally, because the other-acts evidence was highly probative to the issue of identity, the risk of unfair prejudice did not substantially outweigh the probative value of the evidence.

### III. DEFENDANT'S STANDARD 4 BRIEF

In his Standard 4 brief, defendant first argues that he was denied the effective assistance of counsel. To establish a claim of ineffective assistance of counsel, a defendant must show that counsel's performance fell below objective standards of reasonableness and that, but for counsel's deficient performance, there is a reasonable probability that the result of the proceedings would have been different. *People v Uphaus (On Remand)*, 278 Mich App 174, 185; 748 NW2d 899 (2008). Because defendant did not move the trial court for a new trial or an evidentiary hearing, our review of defendant's ineffective assistance claim is limited to mistakes apparent from the record. *People v Heft*, 299 Mich App 69, 80; 829 NW2d 266 (2012).

Defendant claims that defense counsel was ineffective because she failed to bring certain information to the jury's attention during closing arguments. However, much of the information that defendant claims defense counsel failed to mention was, in fact, noted by defense counsel in her closing argument. Regardless, to prove that counsel's performance fell below an objective standard of reasonableness, a defendant must overcome a strong presumption that counsel's performance constituted sound trial strategy. *People v Russell*, 297 Mich App 707, 715-716; 825 NW2d 623 (2012). Counsel's decision concerning what evidence to highlight during closing argument is a matter of trial strategy. *People v Horn*, 279 Mich App 31, 39; 755 NW2d 212

-5-

(2008). We will not second-guess counsel on matters of trial strategy. *Id.* Therefore, defendant fails to overcome the presumption that defense counsel engaged in sound trial strategy in giving her closing argument.

Defendant also claims that defense counsel was ineffective for failing to subpoena his medical records. A defendant has the burden to establish the factual predicate for a claim of ineffective assistance of counsel. *People v Hoag*, 460 Mich 1, 6; 594 NW2d 57 (1999). Defendant claims that his medical records would have shown that he suffered from an inguinal hernia at the time of the charged offenses, but nothing in the record substantiated this claim. Accordingly, defendant has failed to establish the factual predicate for his claim.

Similarly, defendant claims that defense counsel was ineffective for failing to interview his medical providers and family members and for failing to call them as witnesses at trial. Counsel's failure to call witnesses only constitutes ineffective assistance of counsel if it deprived the defendant of a substantial defense. *People v Dixon*, 263 Mich App 393, 398; 688 NW2d 308 (2004). Nothing in the record indicates how any of defendant's medical providers or family members would have testified had they been called as witnesses. Accordingly, defendant cannot establish that, absent counsel's alleged failure to interview his medical providers and family members and her failure to call them as witnesses, there is a reasonable probability that the result of the trial would have been different. See *Uphaus (On Remand)*, 278 Mich App at 185.[1]

Next, defendant argues that, during opening statements, the prosecutor improperly referenced the testimony of a professor and a police officer regarding a 2003 incident at Kendall College, in which defendant allegedly masturbated in front of several female students in a classroom. Specifically, defendant asserts that the prosecutor's comment violated his Sixth Amendment right to confrontation because neither the professor nor the police officer testified at trial. We review this unpreserved claim for plain error affecting defendant's substantial rights. *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999).

There is no merit to defendant's argument. The United States Supreme Court's decision in *Frazier v Cupp*, 394 US 731, 735; 89 S Ct 1420; 22 L Ed 2d 684 (1969), instructs that under the circumstances of the present case, when the only mention of testimony from the professor and the police officer occurred during the prosecutor's opening statement, when the trial court instructed the jury that it must decide the case based on the evidence and that opening statements were not evidence, and when the 2003 incident at Kendall College was not a vitally important part of the prosecutor's case, the prosecutor's statement did not violate defendant's confrontation rights. Defendant also claims that defense counsel was ineffective for failing to move for a mistrial based on the prosecutor's opening statement. "A trial court should grant a mistrial only for an irregularity that is prejudicial to the rights of the defendant and impairs his ability to get a fair trial." *People v Schaw*, 288 Mich App 231, 236; 791 NW2d 743 (2010) (quotation marks and citation omitted). A mistrial is only appropriate when the prejudicial effect of the error

---

[1] To the extent that any of defendant's claims of ineffective assistance of counsel are not addressed by us while analyzing the other issues raised by defendant, we consider them abandoned. See *People v Kelly*, 231 Mich App 627, 640-641; 588 NW2d 480 (1998).

cannot be removed in any other way. *Horn*, 279 Mich App at 36. The trial court instructed the jury that it had to decide the case based on the evidence, and that opening statements were not evidence. These instructions were sufficient to cure any prejudice that resulted from the prosecutor's mention of the 2003 incident at Kendall College. See *Frazier*, 394 US at 735; *People v Abraham*, 256 Mich App 265, 279; 662 NW2d 836 (2003). Because the prejudicial effect of the error was removed by the trial court's instructions, any motion for a mistrial would have been meritless. Defense counsel was not ineffective for failing to make a futile motion. *People v Fike*, 228 Mich App 178, 182; 577 NW2d 903 (1998).

Defendant further claims that defense counsel was ineffective for failing to request a cautionary instruction or a missing witness instruction. Because any instruction specific to the 2003 incident at Kendall College would have reminded the jury of the incident, defense counsel may have decided it was best to forego any instruction specific to the incident, especially when the jury was instructed that opening statements were not evidence. Defendant has failed to overcome the strong presumption that defense counsel engaged in sound trial strategy.

Defendant also argues that the prosecutor's statement constituted intentional misconduct, requiring his convictions to be reversed, because the prosecutor knew or should have known that no evidence of the Kendall College incident was admissible when the prosecutor had not located any of the female students in the classroom. Because defendant raised no claim of prosecutorial misconduct at trial, we review defendant's claim for plain error affecting substantial rights, which requires a showing that the misconduct prejudiced defendant, i.e., affected the outcome of the proceedings. *Carines*, 460 Mich at 763. Regardless whether the prosecutor knew or should have known that evidence of the Kendall College incident was inadmissible, the prosecutor's mention of the incident in her opening statement did not affect the outcome of the proceedings. There was no other mention of the incident, and the trial court instructed the jury that it must decide the case based on the evidence and that opening statements were not evidence. Instructions are presumed to cure most errors, and a jury is presumed to follow its instructions. *Abraham*, 256 Mich App at 279.

Defendant next argues that the trial court violated his right to counsel of his own choosing when, after he retained counsel, the trial court refused to grant an adjournment so that retained counsel could familiarize himself with the case, which caused retained counsel to withdraw his representation. As the appellant, defendant bore the burden of furnishing this Court with a record to verify the factual basis of the claim. *People v Elston*, 462 Mich 751, 762; 614 NW2d 595 (2000). Because defendant's argument is based on proceedings that occurred on August 31, 2015, of which there is no record, defendant has failed to verify the factual basis for his argument. Accordingly, we decline to reverse defendant's convictions for a violation of his right to counsel of his own choosing.

Defendant also argues that, because conflicts of interest existed between him and the public defender's office and between him and defense counsel, the trial court erred by denying his request to appoint substitute counsel. We review a trial court's decision regarding substitution of counsel for an abuse of discretion. *People v Buie (On Remand)*, 298 Mich App 50, 67; 825 NW2d 361 (2012).

The constitutional right to counsel requires that all criminal defendants be afforded counsel during trial. *People v Jackson*, 483 Mich 271, 278; 769 NW2d 630 (2009). Indigent defendants who request an attorney must be provided counsel, but they are not entitled to counsel of their choosing. *People v Russell*, 471 Mich 182, 192 n 25; 684 NW2d 745 (2004). Appointment of substitute counsel is warranted only upon a showing of good cause and where the substitution will not unreasonably disrupt the judicial process. *People v Strickland*, 293 Mich App 393, 397; 810 NW2d 660 (2011). Good cause exists when a legitimate difference of opinion exists between a defendant and appointed counsel over a fundamental trial tactic. *Id.*

On the first day of trial, defendant informed the trial court about two past conflicts that he had with lawyers from the public defender's office, and stated that he believed that, based on those past conflicts, defense counsel, who was employed by the public defender's office, should withdraw. However, defendant never offered the trial court any specific link between those past conflicts and defense counsel's representation of him. We view defendant's claim that defense counsel should have withdrawn because of past conflicts that he had with other attorneys at the public defender's office as nothing more than a claim that he lacked confidence in appointed counsel. Such an allegation is not good cause to appoint substitute counsel. See *People v Traylor*, 245 Mich App 460, 463; 628 NW2d 120 (2001).

Also, on the first day of trial, defendant informed the trial court that defense counsel had failed to file motions for him. He mentioned two specific motions: one to challenge the jury pool in Kent County and one to get him moved from the jail so that he could get medical care. Defendant makes no argument that either of these motions would have had any merit. Defense counsel's failure to file meritless motions does not establish good cause to appoint substitute counsel. See *id.* Moreover, defendant did not complain about defense counsel until right before trial was scheduled to start. At that point, substitution of counsel would have unreasonably delayed the judicial process. See *Strickland*, 293 Mich App at 399. Because defendant did not show good cause for appointment of substitute counsel, and because substitution of counsel would have delayed the judicial process, the trial court did not abuse its discretion by denying defendant's request to appoint substitute counsel.

Next, defendant argues that he was arrested without probable cause and that the pictures taken of him at the time of his arrest should have been suppressed. We review these unpreserved claims for plain error affecting defendant's substantial rights. *Carines*, 460 Mich at 763-764.

The Fourth Amendment, US Const, Am IV, as well as the analogous provision in the Michigan Constitution, Const 1963, art 1, § 11, protects against unreasonable searches and seizures. *People v Champion*, 452 Mich 92, 97; 549 NW2d 849 (1996). Searches and seizures conducted without a warrant are unreasonable per se, subject to several specifically and well-delineated exceptions. *Id.* at 98. A police officer may arrest a person without a warrant if the officer has reasonable cause to believe that a felony was committed and that the person committed the felony. *People v Cohen*, 294 Mich App 70, 74; 816 NW2d 474 (2011); see also MCL 764.15(1)(d). "In order to lawfully arrest a person without a warrant, a police officer must possess information demonstrating probable cause to believe that an offense has occurred and that the defendant committed it." *Cohen*, 294 Mich App at 74 (quotation marks and citation omitted). "Probable cause to arrest exists where the facts and circumstances within an officer's knowledge and of which he has reasonably trustworthy information are sufficient in themselves

to warrant a man of reasonable caution in the belief that an offense has been or is being committed." *Champion*, 452 Mich at 115. The probable cause standard is judged from the totality of the circumstances before the arresting officers. *Cohen*, 294 Mich App at 75.

Defendant was arrested on January 15, 2015, after Sergeant Neil Gomez, who was driving in his personal car, saw a man in front of a restaurant who looked very similar to a suspect in a picture that Detective Josh Cornell had e-mailed to members of the Grand Rapids Police Department. Because Sergeant Gomez was in his personal vehicle and was not in uniform, he called dispatch and requested that uniformed officers respond. Shortly thereafter, several police officers arrived and made contact with the man. Sergeant Gomez called Detective Cornell to inform him about the situation while another officer took the man into custody. The man turned out to be defendant.

Detective Cornell, who was assigned to investigate the indecent exposures at the Downtown Market and Kendall College, testified that he sent an e-mail with three still pictures attached, two from the Downtown Market and one from Kendall College, to members of the Grand Rapids Police Department, including Sergeant Gomez and Officer John Wetzel. Detective Cornell believed that he attached the police reports to his e-mail. Sergeant Gomez testified that Detective Cornell's e-mail contained information in addition to the pictures, although he could not remember that information. But, according to Sergeant Gomez, it was "pretty functional" for an e-mail to explain "what's going on and what the picture's for." Officer Wetzel testified that, when he made contact with Sergeant Gomez, Sergeant Gomez pointed to a person and said the person was wanted for indecent exposure. Based on this testimony, an inference can be made that Detective Cornell's e-mail indicated that defendant was wanted for indecent exposure.

It is not clear or obvious that defendant was arrested without probable cause. *Carines*, 460 Mich at 763. Detective Cornell sent an e-mail, indicating that the person displayed in the attached pictures was wanted for indecent exposure. Sergeant Gomez testified that defendant was "almost to the T" the person in the picture. Officer Wetzel testified that defendant was wearing the same set of distinct clothes as the person in the picture. The facts and circumstances within the knowledge of these officers and of which the officers had reasonably trustworthy information was sufficient to warrant a person of reasonable caution to believe that an offense was committed and that defendant committed it. *Champion*, 452 Mich at 115. Defendant's argument that he was arrested without probable cause is without merit.

Defendant cites no legal authority in support of his claim that the pictures taken of him at the time of his arrest should have been suppressed. Therefore, the argument is abandoned. See *People v Kelly*, 231 Mich App 627, 640-641; 588 NW2d 480 (1998).

Additionally, defendant's argument that defense counsel was ineffective for failing to challenge the validity of his arrest and for failing to move to suppress the pictures taken of him at the time of his arrest is without merit. Because defendant has not established that his arrest or the pictures taken of him at the time of his arrest violated his Fourth Amendment rights, any motion by defense counsel challenging the arrest or pictures would have been meritless. Defense counsel was not ineffective for failing to make a futile motion. *Fike*, 228 Mich App at 182.

Next, defendant argues that he was coerced by defense counsel into giving up his right to testify. A defendant has a constitutional right to testify in his own defense. *People v Bonilla-Machado*, 489 Mich 412, 419; 803 NW2d 217 (2011). Although counsel must advise a defendant of this right, the ultimate decision whether to testify at trial remains with the defendant. *Id.* If a defendant expresses a desire to testify at trial, the trial court must grant the request, even if counsel has advised the defendant against testifying. *People v Simmons*, 140 Mich App 681, 685; 364 NW2d 783 (1985). But if a defendant decides not to testify or acquiesces in counsel's decision that he not testify, then the right to testify is deemed waived. *Id.*

The record indicates that defense counsel advised defendant not to testify. But the record also reflects that defendant was told by the trial court, and he understood, that he had the right to testify and that the trial court would let him testify if he wanted. Then, when the trial court asked defendant if he wanted to testify, defendant said that he had decided against it. The record does not reveal any coercive actions by defense counsel. See *Bonilla-Machado*, 489 Mich at 420-421. Defendant's argument in this regard is without merit.

Defendant argues that he was denied his Sixth Amendment right to be tried by an impartial jury drawn from a fair cross section of the community. We review this unpreserved claim of constitutional error for plain error affecting defendant's substantial rights. *Carines*, 460 Mich at 763-764. To establish a prima facie violation of the fair-cross-section requirement, a defendant must establish the following:

> (1) that the group alleged to be excluded is a "distinctive" group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process. [*Duren v Missouri*, 439 US 357, 364; 99 S Ct 664; 58 L Ed 2d 579 (1979).]

Because defendant makes no argument that applies the three prongs of the *Duren* test to the present case, and because the lower court record contains no facts that would enable us to review the merits of defendant's claim, we reject defendant's argument.

Finally, defendant argues that his convictions for aggravated indecent exposure, MCL 750.335a(2)(b), and indecent exposure by a sexually delinquent person, MCL 750.335a(2)(c), violate double jeopardy protections. On this point, we agree. The United States Constitution, US Const, Am V, and the Michigan Constitution, Const 1963, art 1, § 15, protect a person from being twice placed in jeopardy for the same offense. *People v Nutt*, 469 Mich 565, 574; 677 NW2d 1 (2004). The prohibition against double jeopardy provides three protections: "(1) it protects against a second prosecution for the same offense after acquittal; (2) it protects against a second prosecution for the same offense after conviction; and (3) it protects against multiple punishments for the same offense." *Id.*

Under the statutory scheme of MCL 750.335a, a person is guilty of indecent exposure if the person " 'knowingly make[s] any open or indecent exposure of his or her person or of the person of another,' " and is guilty of aggravated indecent exposure if the person additionally " 'fond[les] his or her genitals, pubic area, [or] buttocks.' " *People v Franklin*, 298 Mich App 539,

546; 828 NW2d 61 (2012), quoting MCL 750.335a(1) and (2)(b) (first and third alterations in *Franklin*). Because aggravated indecent exposure encompasses all of the elements of indecent exposure, a conviction for both offenses arising from the same conduct violates double-jeopardy principles. *Franklin*, 298 Mich App at 547, citing *People v McKinley*, 168 Mich App 496, 504; 425 NW2d 460 (1988) ("[W]here one statute incorporates most of the elements of a base statute and adds an aggravating conduct element with an increased penalty compared to the base statute, it is evidence that the Legislature did not intend punishment under both statutes.").

In this case, defendant was convicted of both aggravated indecent exposure and indecent exposure by a sexually delinquent person. The mere addition of the sexual delinquency classification to the indecent exposure conviction does not change the double jeopardy analysis, as the Court in *Franklin*, 298 Mich App at 547, explained:

> To the extent that the prosecution argues that defendant's convictions do not violate double jeopardy because the indecent exposure conviction required a showing of sexual delinquency, we note that sexual delinquency is not an actual element of that offense. Rather, a finding of sexual delinquency merely allows for an enhancement of the sentence for the indecent exposure offense. [*Franklin*, 298 Mich App at 547.]

Therefore, defendant's convictions for aggravated indecent exposure and indecent exposure by a sexually delinquent person arising from the same conduct violated the constitutional prohibition against double jeopardy. The proper remedy in such a case is to affirm the higher conviction and vacate the lower conviction. *People v Herron*, 464 Mich 593, 609; 628 NW2d 528 (2001). Because aggravated indecent exposure is a lower class crime than indecent exposure by a sexually delinquent person, MCL 777.16q, we vacate defendant's aggravated indecent exposure convictions and their associated sentences, but affirm his convictions for indecent exposure by a sexually delinquent person.

Below, the trial court sentenced defendant to 20 to 40 years' imprisonment for his convictions for indecent exposure by a sexually delinquent person. However, this Court recently held that "trial courts must sentence a defendant convicted of indecent exposure as a sexually delinquent person consistent with the requirements of MCL 750.335a(2)(c)." *People v Campbell*, ___ Mich App ___, ___; ___ NW2d ___ (2016) (Docket No. 324708); slip op at 11. Therefore, we vacate defendant's sentences associated with his convictions for indecent exposure by a sexually delinquent person, and remand so the trial court can sentence defendant to the

mandatory sentence set forth by MCL 750.335a(2)(c) of one day to life in prison.[2]

Affirmed in part, vacated in part, and remanded for resentencing. We do not retain jurisdiction.

/s/ Cynthia Diane Stephens
/s/ Douglas B. Shapiro
/s/ Michael F. Gadola

---

[2] Because the trial court must sentence defendant to the mandatory indeterminate term imposed by MCL 750.335a(2)(c), we need not address defendant's remaining sentencing arguments.