PEOPLE v McKINLEY

Docket No. 85598. Submitted October 22, 1986, at Lansing. Decided January 14, 1988.

Louis F. McKinley was charged with possession of a firearm with intent to unlawfully use it against another person. The charge arose out of an incident which took place in the public defender's office while he was awaiting trial on a larceny charge. At trial in Bay Circuit Court, William J. Caprathe, J., evidence of defendant's intoxication at the time of the incident was introduced. Defense counsel requested an instruction on the misdemeanor offense of possession of a firearm while intoxicated. The prosecution argued that such an instruction should be given, but as a separate offense rather than as a lesser included offense. The trial court gave the misdemeanor charge as a separate offense rather than as a lesser included offense and instructed the jury that it could find defendant guilty of both offenses or of either of the offenses or could find defendant not guilty of both offenses. Defendant was also convicted of being a fifth-felony offender. Defendant was sentenced to a prison term of from ten to twenty years on the felony conviction to be served consecutive to the five to fifteen year sentence he had received on his conviction on the larceny charge which had been pending when the firearm incident took place. Defendant appealed.

The Court of Appeals *held:*

1. Conviction of both the felony and the misdemeanor firearm offenses was not violative of double jeopardy, since each involved proof of an element not required to convict of the other, the two offenses were not directed toward the same social harm, and there are indications that the Legislature intended multiple punishments.

2. Since defendant sought that the jury be instructed on the misdemeanor offense, he may not now complain of lack of

REFERENCES

Am Jur 2d, Criminal Law §§ 266 *et seq.,* 552.

Am Jur 2d, Weapons and Firearms §§ 7 *et seq.*

Inconsistency of criminal verdict with verdict on another indictment or information tried at same time. 16 ALR3d 866.

notice of the added charge nor challenge the jurisdiction of the circuit court to hear the misdemeanor charge.

3. The trial court's instructions adequately informed the jury that the prosecution had the duty to prove defendant's specific intent beyond a reasonable doubt and that the defendant did not have to prove intoxication.

4. The two verdicts were not inconsistent, since the jury could properly find that, while defendant was intoxicated and thus guilty of the misdemeanor, the level of defendant's intoxication was not so great as to impair his ability to form the requisite specific intent needed for conviction of the felony charge.

5. The imposition of a consecutive sentence with the resulting fifteen-year minimum sentence shocks the conscience of the Court.

Affirmed but remanded for resentencing.

R. M. SHUSTER, J., agreed that the conviction should be affirmed but would not remand for resentencing.

1. WEAPONS — POSSESSION OF FIREARMS — MULTIPLE CONVICTIONS — CONSTITUTIONAL LAW — DOUBLE JEOPARDY.

The misdemeanor of possession of a firearm while intoxicated is not a lesser included offense of the felony of possession of a firearm with intent to use it unlawfully against another, since the misdemeanor requires proof of an element not required for conviction of the felony, that being intoxication; since the misdemeanor requires proof of an additional element and is directed at preventing a different harm than the felony, one may be convicted of both crimes even though there is but a single possession, there being no double jeopardy violation (MCL 750.226, 750.237; MSA 28.423, 28.434).

2. INDICTMENT AND INFORMATION — AMENDMENT OF INFORMATIONS — NEW OFFENSES.

A request by a criminal defendant for a jury charge on a misdemeanor which is not a lesser included offense of the charged felony will be treated as a motion to amend the information; if the defendant's motion is granted by the trial court, the defendant may not thereafter claim insufficient notice of the charge or assert that the circuit court lacks jurisdiction over the added misdemeanor charge.

3. WEAPONS — POSSESSION OF FIREARMS — INCONSISTENT VERDICTS.

Convictions of both possession of a firearm with intent to use it unlawfully against another and possession of a firearm while intoxicated arising out of a single incident are not necessarily

inconsistent, since a jury can find that the defendant was sufficiently intoxicated to be guilty of the latter, but not so intoxicated as to have been incapable of forming the requisite intent of the former (MCL 750.226, 750.237; MSA 28.423, 28.434).

4. CRIMINAL LAW — SENTENCING — CONSECUTIVE SENTENCES.

It is an abuse of discretion for a court to order sentences to run consecutively under a provision allowing consecutive sentences where the resulting cumulative total of the minimum sentences is all out of proportion to the acts committed and the dangers involved; resentencing is mandated under such circumstances.

*Frank J. Kelley*, Attorney General, *Louis J. Caruso*, Solicitor General, *George B. Mullison*, Prosecuting Attorney, and *Martha G. Mettee*, Assistant Prosecuting Attorney, for the people.

State Appellate Defender (by *Susan Meinberg Thomas*), for defendant on appeal.

Before: J. B. SULLIVAN, P.J., and SHEPHERD and R. M. SHUSTER,* JJ.

PER CURIAM. Following a jury trial, defendant was convicted of possession of a firearm with intent to unlawfully use it against another person, MCL 750.226; MSA 28.423, a felony, and possession of a firearm while intoxicated, MCL 750.237; MSA 28.434, a misdemeanor. He was also convicted of being a fifth-felony offender, MCL 769.12; MSA 28.1084. Defendant received a ten-to-twenty-year sentence, consecutive with a five-to-fifteen-year sentence on another offense in which defendant was charged with larceny of a $1.95 bottle of wine from a store building. The events of the instant case occurred when defendant came to court on the larceny charge.

We affirm the convictions but remand for resentencing.

---

* Circuit judge, sitting on the Court of Appeals by assignment.

I

On October 3, 1984, defendant was scheduled to start trial in Bay Circuit Court before Judge John X. Theiler on a charge of larceny in a building. Defendant arrived at the Bay County Public Defender's Office about 8:00 A.M., carrying a large styrofoam cup. A secretary advised defendant that his trial might be delayed, since another trial was still in progress before Judge Theiler. Defendant had difficulty understanding and insisted that he had to be in court that morning. When Steven Jacobs, defendant's trial attorney, arrived, they entered Jacobs' office where defendant asked for whiskey when Jacobs offered him coffee.

Defendant and Jacobs went to Judge Theiler's courtroom about 8:30 A.M. and Jacobs informed the judge that defendant had been drinking. At the judge's suggestion, Jacobs started giving defendant coffee and, at 9:30 A.M., they left the courtroom to return to Jacobs' office. Out in the parking lot, defendant and Jacobs had a confrontation. Defendant became angry, saying that he was not happy with Jacobs and that he was going to "blow away the judge and the bitch [the complaining witness]." Defendant displayed a number of $20 bills and said he was going to the Mill End Store to buy a shotgun to blow them away. Jacobs informed the members of his office and Judge Theiler concerning defendant's threats.

Defendant arrived at the Mill End Store at about 9:45 A.M., filled out the necessary forms, and purchased an over-and-under shotgun/rifle with two boxes of shells. He returned to the public defender's office during the afternoon with a long box and a small bag. Defendant sat down with the box across his lap. When Eric Proschek, the director, asked defendant what was in the box, defen-

dant pulled out the gun, which had the hammer cocked back. Proschek held the barrel and pointed the gun toward the ceiling. When Proschek asked defendant if he was going squirrel hunting, defendant said he was going to hunt people. Defendant became very agitated and insisted that Proschek release the gun, so Proschek let it go.

Jacobs called the office and told the secretaries to leave as if they were going on their coffee break. While they were leaving, defendant reached for the bag of shells and said that "they weren't going to take him back to prison and he would take somebody with him if they came to get him." He pulled the trigger as the gun was pointed upright and it clicked. Defendant then opened the gun and started fumbling for shells. Proschek jerked the gun away from defendant and handed it to someone in the hallway, who took it downstairs to the probation department. Robert Ropp of the District Court Probation Department arrived. When he entered the office, Proschek was attempting to get some shells away from defendant. Ropp assisted Proschek in retrieving the shells and in getting defendant to sit down. Defendant was belligerent and was arguing about leaving.

Defendant testified that he recalled very little regarding the events of October 3, 1984. He denied removing the shells from the box, attempting to load the gun, or threatening anyone. According to defendant, he had been drinking for two weeks prior to that date and all night on October 2 because he knew he was scheduled to go to trial. He testified that he had been admitted to the Veteran's Hospital on ten to twelve occasions and to the Battle Creek Adult Mental Health Center for treatment of alcoholism and that he had experienced several blackouts. He claimed his only

memory of October 3, 1984, was waking up in the drunk tank of the county jail at about 8:00 P.M.

Defendant was charged with possession of a firearm with intent to use it unlawfully against another. His jury trial began on February 26, 1985, Bay Circuit Judge William J. Caprathe presiding. At the instructions conference, defense counsel requested an instruction on the lesser included offense of possessing a firearm while under the influence of alcohol. The prosecutor argued that such an instruction should be given, but as a separate offense, not as a lesser-included offense. Defense counsel objected, arguing that a guilty verdict on both counts would be inconsistent. The trial court gave the instruction as a separate rather than lesser-included offense. The trial court informed the jury they could return a verdict of guilty of both offenses or of either of the offenses or a verdict of not guilty of both of the offenses. The jury found defendant guilty of both offenses.

II

Defendant first argues that his two convictions violated both federal and state double jeopardy standards. We, however, disagree with defendant's premise that these two offenses should be regarded as one offense.

Under the test set forth in *Blockburger v United States,* 284 US 299, 304; 52 S Ct 180; 76 L Ed 306 (1932), two separate offenses exist where each offense requires proof of at least one fact which the other does not. Application of this standard to the statutes before us indicates that double jeopardy was not violated. Conviction for possession of a firearm while intoxicated requires proof of intoxication. Conviction for possession of a firearm with intent to use it unlawfully against another re-

quires proof of that specific intent. As such, the two offenses are not a single offense, and double jeopardy is not violated if defendant is convicted of both.

Defendant, however, argues that under *Harris v Oklahoma,* 433 US 682; 97 S Ct 2912; 53 L Ed 2d 1054 (1977), and *Illinois v Vitale,* 447 US 410; 100 S Ct 2260; 65 L Ed 2d 228 (1980), the two offenses of which he was convicted actually constitute only one offense. In *Harris,* the defendant was convicted of felony murder. The Supreme Court held that a subsequent prosecution for the underlying felony, armed robbery, was barred by double jeopardy. Conviction of the greater felony could not be had without conviction of the lesser crime. In *Vitale,* the defendant was convicted of failing to reduce speed to avoid an accident and was subsequently charged with involuntary manslaughter. The Supreme Court remanded the case to the Illinois court. It held that if, as a matter of state law, failure to reduce speed to avoid an accident is always a necessary element of manslaughter, then the manslaughter prosecution would be barred by double jeopardy. Also, the Court was unsure what reckless act or acts the state would rely on to prove manslaughter, noting that the defendant would have a substantial double jeopardy claim if the prosecutor used the failure to reduce speed as the necessary reckless act.

We are not persuaded that these cases have changed the essential nature of the *Blockburger* inquiry. Defendant could have been convicted of either one of the two charges alone and, unlike *Harris* and *Vitale,* the conviction would not have necessarily included the other offense. This is so because one charge requires proof that defendant possessed a firearm with a specific intent to use it against another person, while the second charge

has no intent requirement but includes the additional element of intoxication. The only common element of the two offenses is possession of a firearm, but that element alone proves neither offense. The crucial elements and the proofs of defendant's two offenses are sufficiently different so as to constitute two separate offenses under these facts. Compare *People v Dickens,* 144 Mich App 49, 53-54; 373 NW2d 241 (1985), where "DUIL was charged as part of and was essential to proving the negligence element of negligent homicide" and the two offenses were not "sufficiently distinct as charged and proven to prevent double jeopardy from attaching."

Under federal law, including the *Blockburger* test, the question of whether multiple punishments may be imposed without violating double jeopardy requires a determination of what the Legislature intended. See *Whalen v United States,* 445 US 684, 688; 100 S Ct 1432; 63 L Ed 2d 715 (1980). The Supreme Court has indicated that the *Blockburger* rule is not controlling when the legislative intent that separate offenses be created is clear from the face of the statutes or the legislative history. *Garrett v United States,* 471 US 773; 105 S Ct 2407; 85 L Ed 2d 764 (1985). Legislative intent is also the focus under state constitutional law. In *People v Robideau,* 419 Mich 458, 485-486; 355 NW2d 592 (1984), however, the Michigan Supreme Court rejected use of the *Blockburger* test in holding that convictions of both first-degree criminal sexual conduct and the underlying felony of armed robbery or kidnapping in a single trial are not barred by federal or state double jeopardy. Instead, the Court preferred the "traditional means to determine the intent of the Legislature: the subject, language, and history of the statutes." 419 Mich at 487-488. See also the recent opinion in

*People v Sturgis,* 427 Mich 392; 397 NW2d 783 (1987). The *Robideau* Court identified some general principles that may be used as an aid to determining legislative intent. First, where two statutes prohibit violations of the same social norm, albeit in a somewhat different manner, as a general principle it can be concluded that the Legislature did not intend multiple punishments. Second, where one statute incorporates most of the elements of a base statute and adds an aggravating conduct element with an increased penalty compared to the base statute, it is evidence that the Legislature did not intend punishment under both statutes.

Defendant argues that the two statutes under which he was convicted are both aimed at preventing harm to others from possession of a firearm. Defendant's view of the proscribed conduct, however, is rather broad. Accepting his argument would mean that a person could never be convicted of more than one possession-of-a-firearm offense arising out of one occurrence. The better view would be to examine the proscribed conduct more narrowly. The statute proscribing possession of a firearm with the intent to use it unlawfully against another person is aimed at those persons who specifically intend to harm others through the use of a firearm. The offense of possession of a firearm while intoxicated is aimed at those persons who may carelessly or inadvertently cause harm to others. Viewed more narrowly, the statutes protect against two different sources of harm and violations of distinct social norms regarding the use of firearms. In the instant case, it is conceivable that both of those distinct sources of harm were present, as discussed *infra,* in part v concerning consistency of the verdicts. Using the first principle in *Robideau,* we believe that the Legisla-

ture intended multiple punishments. The second principle of *Robideau* is not applicable because this is not a case where one statute builds on another statute by adding aggravating conduct.

Defendant further argues that double jeopardy was violated by citing *People v Grable,* 95 Mich App 20, 26-27; 289 NW2d 871 (1980), lv den 413 Mich 933 (1982). Defendant argues that his convictions arose from a continuum of conduct evidencing a single criminal transaction. *Grable,* however, involved a conviction of forgery which then was used to supply the knowledge element required for a conviction of uttering and publishing the same document. In *Grable,* unlike the instant case, one offense was factually completely contained in the other so that there was only one wrong act. Defendant also relies on other cases involving the so-called "factual double jeopardy analysis." See *People v Jankowski,* 408 Mich 79; 289 NW2d 674 (1980); *People v Stewart (On Rehearing),* 400 Mich 540; 256 NW2d 31 (1977); *People v Martin,* 398 Mich 303; 247 NW2d 303 (1976). These cases suggest that crimes should be examined on the facts of a particular case rather than in the abstract to determine whether they are the same. Thus, armed robbery, larceny in a building, and larceny over $100 are definitionally separate crimes. However, where a defendant took a cash register containing $400 from a gas station building after placing the attendant in fear by the use of a weapon, he committed all three offenses. The same proof would be relied upon for all three convictions. Therefore, conviction on all three offenses was a violation of double jeopardy. *Jankowski, supra* at 89.

In the instant case, there is no such similarity of facts and proof as to the two offenses. Rather, one offense requires proof of specific intent. The evi-

dence offered at trial as to intent was the defendant's statement that he was "going to hunt people" and that he was going to "blow away the judge and the bitch." The second offense requires proof of intoxication. Defendant testified that he had been drinking for two weeks prior to the incident. The only common proofs are that defendant was in possession of a firearm. Proof of possession of a firearm as to one offense, however, did not automatically prove the elements of the second offense. Therefore, this case is unlike *Jankowski*, where the same proofs were used for all three offenses. Defendant's two offenses are separate and distinct crimes. Conviction for each did not violate double jeopardy.

### III

Defendant next argues that he was denied due process by inadequate notice that he would have to defend the charge of possession of a firearm while intoxicated. We disagree. Defendant's counsel requested a jury instruction on that offense.

In *People v Williams*, 412 Mich 711, 714-715; 316 NW2d 717 (1982), the information charged the defendant and codefendant with first-degree murder and felony-firearm. After the codefendant was acquitted by directed verdict, defendant's counsel requested that the jury be instructed that it could convict defendant of being an accessory after the fact. In closing argument, defendant's counsel argued that, if the defendant was guilty of any crime, it was of being an accessory after the fact. The jury convicted defendant of felony-firearm and of being an accessory after the fact. On appeal, defendant argued that he could not be convicted of a crime that was not charged in the information. The Supreme Court held the defendant's request

for the accessory after the fact instruction was the functional equivalent of a motion to amend the information under MCL 767.76; MSA 28.1016. Since the prosecutor made no objection and the trial court agreed, the information was effectively amended. Defendant could not subsequently claim he had insufficient notice of the charge after urging the extension of this option to the jury.

As defendant's counsel in the instant case requested the jury instruction and the prosecutor did not object, we treat defendant's request as a motion to amend the information. Defendant may not claim that he had insufficient notice.

Defendant also argues that the trial court could not have acquired jurisdiction over the misdemeanor, arguing that it has consistently been held that an information may not be amended to add a new offense. *Williams, supra,* allowed such an amendment, but did not specifically address the jurisdictional issue when it held that the defendant's requested jury instruction operated to amend the information. This Court held in *People v Price,* 126 Mich App 647, 654; 337 NW2d 614 (1983), that a similar amendment to the information deprived the court of jurisdiction. In *Price,* it was the prosecutor who requested the amendment. This Court distinguished *Williams* by the fact that it was the defendant in *Williams* who requested the amendment. Therefore, although *Williams* did not address the jurisdictional issue, we interpret it to mean that a defendant waives such a jurisdictional defect by moving to amend the information. The trial court had jurisdiction over the misdemeanor charge added by defendant's amendment. Any other result would allow a defendant to place the court in an untenable dilemma. If defendant moved to add a new offense in midtrial, the circuit court would lose jurisdiction if the motion were

granted. On the other hand, if the motion were denied, defendant would argue with some justification that the evidence brought out at trial mandated the addition of the additional charge.

IV

Defendant next argues that the trial court's instructions failed to fully explain defendant's felony defense of lack of specific intent due to intoxication. Specifically, defendant asserts that the jury was never told that the prosecutor had to prove defendant's specific intent beyond a reasonable doubt and that defendant did not have to prove intoxication.

Instructions must be read together as a whole. They will be upheld if they accurately state the law. *People v Doss,* 122 Mich App 571, 578; 332 NW2d 541 (1983). Failure to object to alleged error in instructions precludes relief on the basis of error in the instructions unless the error in the instructions has resulted in a miscarriage of justice. *People v Federico,* 146 Mich App 776, 784-785; 381 NW2d 819 (1985).

Both attorneys agreed to use the trial court's instruction on specific intent and intoxication in lieu of CJI 3:1:16 and 6:1:02, which the court described as a combination of the two standard instructions:

> Now, this offense has an element in it, the third element—the second and third element actually which are considered specific intent elements. I told you that the second element was that at the time he was so armed, the defendant intended to use this weapon and, third, that he intended to use this weapon unlawfully against another person. Those are specific intents, that he intended to use the weapon in that manner. Where the words

"with intent to", or "intentionally", or "intended"
are used in these instructions, a particular intent
is referred to which is a necessary element of that
offense, and the existence of that particular intent
must be proven by the same standards that apply
to any other element of the offense. And in this
case, those two elements are the defendant in-
tended to use the weapon that he was armed with
and he intended to use the weapon unlawfully
against the person of another.

"Intent" is a decision of the mind to knowingly
do an act with a conscious fully-formed objective of
accomplishing a certain result. In considering
whether a person did any act with a particular
intent, you should consider how that person ex-
pressed the intent to others or indicated it by
conduct, the manner in which the act was done,
the methods used, the condition of the persons's
mental faculties at the time, and all other facts
and circumstances. In this regard, there has been
evidence that the defendant, Louis McKinley, was
intoxicated. You must, therefore, consider whether
his degree of intoxication was such that he was
unable to or could not form the specific intents
that I've made reference to.

The trial court also fully instructed the jury that
defendant was not required to prove his innocence
or produce any evidence whatsoever, that the bur-
den remained on the prosecutor throughout the
entire trial and never shifted to defendant, and
that the prosecutor had to prove every element of
the crime beyond a reasonable doubt.

Taking these instructions together as a whole,
we believe the jury was adequately instructed. It
was made clear to the jury that the prosecutor had
the burden of proving defendant's specific intent
beyond a reasonable doubt. We note that the trial
court's use of the phrase "unable to or could not
form the specific intents" was quite similar to an
instruction approved in *People v Savoie,* 419 Mich

118, 134; 349 NW2d 139 (1984). Defendant argues that the jury's "inconsistent" verdicts demonstrated that the jurors were confused by the intoxication instructions. For the reasons outlined below in part v, we do not believe the verdicts were inconsistent, nor do we believe the jury was confused. We also do not believe that defendant's counsel's approval of the instructions denied defendant effective assistance of counsel.

v

Defendant argues that the guilty verdicts were inconsistent. We find, however, that the two guilty verdicts are not necessarily inconsistent. Even if they were, reversal is not required. Juries may give inconsistent verdicts. *People v Vaughn,* 409 Mich 463, 466; 295 NW2d 354 (1980) (involving conviction of felonious assault but acquittal of felony-firearm). Inconsistent verdicts might be cause for reversal when it is evident that the jury was confused, did not understand the instructions, or did not know what it was doing. See *People v Lewis,* 415 Mich 443, 450, n 9; 330 NW2d 16 (1982).

The verdicts in the instant case are not necessarily inconsistent. The jury could have found that defendant was intoxicated, but not so intoxicated that he was unable to form the specific intent. Defendant's arguments on intoxication assume that, if one is intoxicated, he is not capable of forming a specific intent. Intoxication is a relative term, and one may be intoxicated to the point of being guilty of one offense yet not intoxicated enough to be guilty of another.

Even if the jury's verdicts were inconsistent, defendant offers no evidence indicating that the jury was confused other than the alleged inconsis-

tency itself. More is required. The jury here was instructed that four verdicts were possible: not guilty or guilty of possession of a firearm with intent to use it unlawfully against another, and not guilty or guilty of possession of a firearm while intoxicated. The jury was told that only one verdict could be returned for each of the two charges. We have examined the verdict form and instructions and find them to be quite understandable as to the possibilities. We find no error. We therefore affirm the convictions.

## VI

At our request the parties have briefed the question of the propriety of defendant's sentence and whether that sentence should shock our conscience. Given the fact that the sentence in this case was made consecutive to the sentence in the larceny case, defendant is serving a fifteen-year minimum sentence. We find that the resulting sentence violates the *Coles* test and remand for resentencing. *People v Coles,* 417 Mich 523; 339 NW2d 440 (1983); *People v Curry,* 142 Mich App 724; 371 NW2d 854 (1985).

The length of the sentence resulting from the imposition of a consecutive sentence is out of all proportion to the facts. Defendant was visibly intoxicated the morning of the incident and indicated that he had been on a two-week drinking episode. Upon his return to the defender's office he was easily disarmed of the unloaded gun. Defendant is blind in one eye and has poor vision in the other. Defendant had shown no previous propensity to violence. We believe the resulting sentence is sufficiently disproportionate to the nature of this defendant and this offense to shock our conscience. *Curry, supra.*

We recognize the potential danger of defendant's conduct and that the potential victim was a judge. We also recognize that these events grew out of the consequences of defendant's acute alcoholism. We do not dispute that a prison sentence—even a lengthy one—is in order. We conclude, however, that a fifteen-year minimum sentence for the events that occurred here is disproportionate to the specific acts committed and the danger involved. Too frequently reasons are given for a sentence that apply equally well to a lesser or greater sentence unless an explanation is offered on the record for the specific sentence given. Such was the case here. We are unable to discern from the record why a fifteen-year minimum rather than a ten-year minimum was necessary to punish this defendant for his specific conduct.

While this Court does not impose sentences, we note that our consciences would not be shocked if the sentences in the two cases were concurrent.[1]

The convictions are affirmed. Remanded for resentencing.

R. M. SHUSTER, J., concurred with the affirmance of the convictions but would dissent from the remand for resentencing, since his conscience is not shocked by the sentence imposed by the trial court.

---

[1] The sentences were not required to be consecutive. MCL 768.7b; MSA 28.1030(2).