# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

DONALD LEE BUSH,

        Defendant-Appellant.

UNPUBLISHED
May 9, 2017

No. 331716
Barry Circuit Court
LC No. 15-000543-FH

Before: WILDER, P.J., and BOONSTRA and O'BRIEN, JJ.

PER CURIAM.

Defendant was convicted of failing to comply with his reporting obligations under MCL 28.729(2), part of Michigan's Sex Offender Registration Act (SORA), MCL 28.721 *et seq*. The trial court sentenced defendant as a fourth-offense habitual offender, MCL 769.12, to 96 months to 15 years' imprisonment. Defendant appeals his sentence by delayed leave granted.[1] We affirm.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

As a previously convicted sex offender, defendant was obligated to periodically report his residence or domicile, to participate in the verification of the information provided, and to pay a registration fee. MCL 28.725a. Defendant had registered an address in 2014, but he failed to report for SORA verification in March 2015 and did not pay his registration fee. At some point, he moved from his registered address and failed to register his new address. Also in March 2015, the Barry County district court issued a bench warrant for defendant's arrest. According to the pre-sentence investigation report (PSIR) prepared by the probation department, the bench warrant related in some fashion to defendant's 2013 plea-based conviction for misdemeanor assault and battery, originally charged as aggravated assault.

On May 4, 2015, defendant was arrested for failing to comply with his SORA reporting duties. Upon his arrest, defendant admitted that he had deliberately not registered his new

---

[1] *People v Bush*, unpublished order of the Court of Appeals, entered April 1, 2016 (Docket No. 331716).

address because he knew that he had an outstanding bench warrant. Defendant also admitted to possessing a cellular phone that he had not reported as required by SORA. Defendant was also charged at that time with possession of marijuana, although the PSIR lists that offense as "dismissed."

Defendant pled guilty to one count of failing to update sex offender registration, MCL 28.729(2), a felony under the Code of Criminal Procedure[2], in return for the dismissal of two other charges: failure to comply with SORA, MCL 28.729(1), a felony under both the Penal Code and the Code of Criminal Procedure; and failure or refusal to pay the SORA registration fee, MCL 28.729(4), a misdemeanor.

In addition to these current charges, the PSIR reflects that since 1990, defendant has been convicted of 3 counts of criminal sexual conduct in the second degree (CSC II) (person under 13), one count of breaking and entering a motor vehicle to commit larceny, two counts of criminal sexual conduct in the third degree (CSC III), and a plea-based conviction of attempted failure to comply with SORA in 2013. Defendant thus was previously convicted of 5 high-severity felonies, MCL 777.51, all sex offenses, as well as two low-severity felonies, MCL 777.52. Defendant was also convicted of 6 misdemeanors; these included, apart from multiple convictions related to the suspension of his driver's license, convictions for failing to report an automobile accident and two assaultive misdemeanors: domestic violence and the earlier-referenced misdemeanor assault and battery conviction pled down from aggravated assault.[3]

Defendant also possesses a juvenile criminal history that included a conviction for larceny (of a shotgun) and the dismissal by plea agreement of another larceny charge and a charge for possession of a switchblade. According to the PSIR, defendant was first arrested at the age of 15, and, by the age of 43, and counting juvenile convictions, prior adult convictions and the instant conviction, had managed to be convicted of 15 offenses between 1986 and 2015. Finally, the PSIR also contained defendant's admissions that he had been smoking marijuana daily, other than during periods of incarceration, since he was 17, and that he had used methamphetamine from 2014 until his arrest for the instant offense. The probation department recommended, "[i]n the interest of public safety," that defendant be sentenced to a minimum sentence of 6 years' imprisonment, a sentence outside the recommended guidelines range of 10 to 46 months' imprisonment, noting that "the [s]entencing guidelines do not take into account the

---

[2] Although MCL 28.729(2) describes the offense of failing to update sex offender registration as a misdemeanor punishable by a maximum of two years imprisonment, our Supreme Court has stated that "[a]n offense labeled a two-year misdemeanor under the Penal Code falls within the definition of 'felony' under the Code of Criminal Procedure." *People v Smith*, 423 Mich 427, 439; 378 NW2d 384 (1985); see also MCL 761.1(g) (" 'Felony' " means a violation of a penal law of this state for which the offender, upon conviction, may be punished by death or by imprisonment for more than 1 year or an offense expressly designated by law to be a felony.")

[3] Assault that inflicts aggravated injury may be punishable as either a misdemeanor or a felony depending on the particular circumstances of the offense. MCL 750.81a.

total prior convictions for Criminal Sexual Conduct or the assaultive nature of prior scorable misdemeanor convictions."

The prosecution presented the trial court with a sentencing memorandum before sentencing, in which it also pointed out that the sentencing guidelines did not account for all of defendant's prior offenses and urged the trial court to consider defendant's extensive criminal history and the fact that defendant had not been deterred by numerous prior incarcerations. The prosecution sought a minimum sentence of 116 months (9 years and 8 months).

At sentencing, the prosecution noted that defendant had been "charged in the past with three separate CSC's, so three separate victims, over a period of time, so it's not like it was one case with three separate victims, three separate cases separated by a prison term." The prosecution further argued that "[w]hen [defendant] was here just a year or two ago on a failure to register as a sex offender case, he was given a jail sentence. In the jail he committed an aggravated assault, so he's a sexual predator, he's violent, and he's not following the rules of the sex offender registration." The prosecution reiterated its recommendation for a minimum sentence of 116 months as "a perfectly reasonable sentence," offering that "for public safety [defendant] needs to be locked up for as long as possible."

The trial court noted that defendant had seven felonies and six misdemeanors, although it erroneously stated that three of defendant's felonies were sexual offenses; in fact, fully five of them were. The trial court also noted that defendant was "exactly the kind of person we wanna [sic] keep track of," and yet he had "blown off" SORA registration twice in two years. Defendant admitted to the trial court that his recent assault and battery conviction had occurred while he was in jail for another offense. The trial court stated that it had read the prosecution's sentencing memorandum and that it believed that "the scoring for prior offenses, particularly in a situation like [defendant's], are grossly underweighted" in light of the number and types of offenses defendant had committed, as well as the fact that defendant's previous incarcerations had not deterred or rehabilitated him. The trial court concluded:

> I'm ordering that you serve—for the reasons stated by the prosecutor and stated by this Court regarding the sentencing guidelines, which have been taken into consideration and are recognized by this Court—however, as far as a substantial and compelling reason to depart, I do find that to be a reason: The— the fact that the prior record variables are grossly underweighted and particularly with respect to the type of crimes that were committed and the relationship between the nature of this crime in conjunction with the prior crimes—this Court believes a reasonable sentence would be 96 to 180 months in the Michigan Department of Corrections. You have credit for 115 days.

This appeal followed.

## II. STANDARD OF REVIEW

We review a trial court's upward departure from a defendant's calculated guidelines range for reasonableness. *People v Lockridge*, 498 Mich 358, 391-392; 870 NW2d 502 (2015). We review the reasonableness of a sentence for an abuse

-3-

of the trial court's discretion. See *People v Steanhouse*, 313 Mich App 1, 44-47; 880 NW2d 297 (2015), lv gtd 499 Mich 934 (2016), quoting *People v Milbourn*, 435 Mich 630, 634-636; 461 NW2d 1 (1990). [*People v Walden*, ___ Mich App ___, ___; ___ NW2d ___ (2017), slip op at 4.]

## III. ANALYSIS

Defendant argues that the trial court erred by adopting the prosecution's rationale for the upward departure, because the factors considered by the court to justify the sentence were factors considered already in defendant's guidelines range; therefore, defendant asserts, his sentence is unreasonable and requires remand and resentencing. We disagree.

We recently discussed the analytical framework for a defendant's claim that his sentence is unreasonable under *Lockridge*:

> With regard to defendant's claim that his sentence was substantively unreasonable, our Supreme Court in *Lockridge*, 498 Mich at 364-365, rendered the Michigan sentencing guidelines advisory. Additionally, the Court in Lockridge determined that trial courts are no longer required to articulate substantial and compelling reasons to depart from the minimum sentencing guidelines range; rather, the sentence must only be reasonable. *Id*. at 391-392. This Court has stated that a sentence is reasonable under *Lockridge* if it meets the principle of proportionality enumerated in *Milbourn*. *Steanhouse*, 313 Mich App at 22. "[T]he principle of proportionality . . . requires sentences imposed by the trial court to be proportionate to the seriousness of the circumstances surrounding the offense and the offender." *Milbourn*, 435 Mich at 363. Put another way, "the [trial] judge ... must take into account the nature of the offense and the background of the offender." *Id*. at 651. As our Supreme Court has stated:

> > [D]epartures [from the minimum sentencing guidelines] are appropriate where the guidelines do not adequately account for important factors legitimately considered at sentencing . . . . [T]rial judges may continue to depart from the guidelines when, in their judgment, the recommended range under the guidelines is disproportionate, in either direction, to the seriousness of the crime. [*Milbourn*, 435 Mich at 656-657.]

> Factors that may be considered by a trial court under the proportionality standard include, but are not limited to:

> > (1) the seriousness of the offense . . . , (2) factors that were inadequately considered by the guidelines . . ., and (3) factors not considered by the guidelines, such as the relationship between the victim and the aggressor . . ., the defendant's misconduct while in custody . . ., the defendant's expressions of remorse . . ., and the defendant's potential for rehabilitation. [*Steanhouse*, 313 Mich App at 46 (citations omitted).]

[*Walden*, ___ Mich App at ___, slip op at 4-5.]

-4-

Here, as in *Walden*, the trial court sentenced defendant shortly after *Lockridge* was decided by our Supreme Court, and specific reference was made to *Lockridge* at the sentencing hearing.[4] *Id*. at 5. The court was therefore aware of the applicable reasonableness standard.

Based on the record, we conclude, as in *Walden*, that the trial court did not abuse its discretion, that the sentence imposed satisfied the requirement that a sentencing departure be "proportionate to the seriousness of the circumstances of the offense and the offender," *Milbourn*, 435 Mich at 636, and that it was therefore reasonable under *Lockridge*. Although defendant argues that the PRVs and fourth-offense habitual offender status already account for defendant's prior record, we agree with the trial court that defendant's prior record variable score, and specifically the score for PRV 1 (prior high-severity felonies) was grossly underweighted. The maximum number of points scored for PRV 1 is 75 for three high-severity felonies. Defendant had five such felonies, all of them sexual offenses. Thus two of his CSC convictions were not accounted for in his PRV score.[5] Further, the sentencing enhancement for a fourth-offense habitual offender only takes into account 3 prior felony convictions and the sentencing offense, leaving many of defendant's prior felonies unaccounted-for; if Michigan had an eight-offense habitual offender status, defendant's argument would be much more persuasive. Finally, the *nature* of the prior offenses as sex offenses cannot be understated in relation to the instant offense. With five previous sexual offenses, at least three of them against a child under 13, defendant is precisely the sort of recidivism-prone sexual offender that is "a potential serious menace and danger to the health, safety, morals, and welfare of the people, and particularly the children, of this state[.]" MCL 28.721a. SORA was designed to protect the people and children of Michigan from offenders of defendant's type. *Id*. The sentencing guidelines simply do not capture the full import of defendant's prior felonies, or the extent to which defendant, by his extensive criminal history, has acted to frustrate the purpose of SORA and to deprive the people of Michigan of its protections.

Additionally, defendant has demonstrated that incarceration has no deterrent or rehabilitative effect on him. Wholly apart from his sexual offenses and other felonies, defendant has a history of other violent offenses, and his most recent assault conviction occurred while defendant was already incarcerated. Defendant also admitted to the regular use of controlled substances despite having attended substance abuse counselling and groups while incarcerated. Defendant's potential for rehabilitation can only be described as abysmal, while his propensity for recidivism and misconduct even while in custody is high; the trial court properly recognized that the guidelines did not take these factors into account. *Steanhouse*, 313 Mich App at 46.

---

[4] Although the trial court referred to "substantial and compelling" reasons to depart from the guidelines range, which could be interpreted as reference to the pre-*Lockridge* standard, the trial court also stated that the sentence was "reasonable." Counsel for both parties made reference to *Lockridge* before the trial court, and to their understanding that the sentencing was proceeding under the standards set forth in that case.

[5] We note that the scoring of this PRV does not change depending on whether the underlying convictions are for three CSC II convictions or whether the scoring is in part based on CSC III convictions.

-5-

Finally, while the trial court did not speak explicitly to the reasonableness of the amount of the departure, we conclude that it did not abuse its discretion in light of these considerations. We discern from the record that the length of the sentence was proportionate to the offense and the offender; indeed, as the prosecution points out, calculating defendant's score for his PRVs in a way that accounts for all of his prior convictions would result in nearly double his total PRV score, without even considering the other factors at issue here such as defendant's demonstrated immunity to rehabilitation or deterrence and his repeated frustrating of the protective purpose of SORA. See *Milbourn*, 435 Mich at 660, citing *People v McKinley*, 168 Mich App 496, 512; 425 NW2d 460 (1988). The trial court's minimum sentence of 96 months' imprisonment also was well within the two-thirds rule of *People v Tanner*, 387 Mich 683; 199 NW2d 202 (1972). For all of these reasons, we find no abuse of discretion. *Steanhouse*, 313 Mich App at 46; *Walden*, ___ Mich App at ___.

Affirmed.


/s/ Kurtis T. Wilder
/s/ Mark T. Boonstra
/s/ Colleen A. O'Brien

-6-