*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

JOHN THOMAS BALENDA II,

Defendant-Appellant.

UNPUBLISHED
May 21, 2025
11:46 AM

No. 368422
Midland Circuit Court
LC No. 22-009139-FH

Before: MARIANI, P.J., and MALDONADO and YOUNG, JJ.

PER CURIAM.

Defendant, John Thomas Balenda II, repeatedly struck his girlfriend of over ten years in the face so hard she went blind in one eye. He was arrested and charged for these acts, and a jury convicted him of assault with intent to do great bodily harm less than murder (AWIGBH), MCL 750.84(1)(a), and aggravated domestic violence, MCL 750.81a(2). The trial court sentenced Balenda beyond his guidelines range, to a minimum of 3 years' imprisonment for the conviction of assault with intent to do great bodily harm less than murder. Balenda was sentenced within his guidelines range to 12 months' imprisonment for the conviction of aggravated domestic violence. Balenda appeals by right and we affirm his convictions, but vacate and remand for resentencing on the AWIGBH conviction.

## I. FACTUAL AND PROCEDURAL HISTORY

Balenda and his girlfriend (the victim) were in a relationship for 10½ years and they lived together on August 26, 2022, the date of the assault. The victim recalled she had multiple shots of alcohol and was driving, and then her next recollection was of being at the hospital. Balenda picked her up from the hospital and when they were at home, he told her that she had gotten a DUI. The victim testified that at that point, Balenda seemed more sad than angry with her.

This changed when the victim later woke up to find Balenda screaming at her that she was "the reason he was drinking again." Balenda began hitting the victim in the right eye repeatedly and "with a lot of force." Eventually, Balenda stopped and when the victim went to clean off the blood, she realized that the injury was very severe and the bleeding from her head would not stop. She fled the house and sought help from a neighbor, who called 911.

-1-

The victim was transported to the hospital, where it was determined she suffered a hemorrhage in the fluid in the back of her right eye, a laceration to the white of the eye, and had a clot coming out of her eye. This indicated she had a globe rupture, meaning the eye was perforated. She also had a laceration around the outside of her eye that was in a C shape, which would come from something rounded, such as a tumbler, and the injury was not consistent with being punched with a fist. The victim was transferred to the University of Michigan Kellogg Eye Center for the best chance to save her eye. Although the victim underwent four hours of surgery, Balenda's assault left her permanently blind in her right eye, and she now wears a prosthetic eye.

Balenda declined a plea to the AWIGBH charge in exchange for dismissal of the aggravated domestic violence charge and proceeded to trial. At trial, the jury heard from the neighbor who called 911, responding police officers who arrested Balenda, the victim's emergency medicine doctor, the victim's mother, and finally the victim. After the prosecution rested, Balenda moved for a directed verdict, and trial court denied the motion. The defense rested, and the jury convicted Balenda of both charges.

At sentencing, the prosecution argued that OV 7 should be scored at 50 points for excessive brutality. The prosecution reasoned the assault went beyond the normal brutality of punching someone in the eye because Balenda used repetitive, violent force against the victim, who was helpless, highly intoxicated, and begged Balenda to stop. There was also blood everywhere and signs of a disturbance throughout the house. Defense counsel argued that the victim's testimony included only that she was punched no more than 10 times and the assault was not in multiple rooms. The trial court noted that there was testimony that there was blood all over the house, the TV was "thrown off," the door was broken, and things in the bedroom were broken. The trial court remarked that this was the worst injury it had seen in a nonmurder case. It also noted that Balenda beat the victim so badly that "she ruptured her eyeball and broke the bones around her eye and now she has a glass eye." The trial court also heard the victim's impact statement, wherein she spoke of the physical, mental, and emotional trauma of losing her eye, her feeling depressed and suicidal, her relapse into alcohol addiction, her PTSD, and her need for lifelong therapy. The trial court assessed 50 points for OV 7 for excessive brutality.

Balenda's total PRV score was zero, and his total OV score was 90, placing him in OV level VI for Class D offenses, MCL 777.65, with a sentencing guidelines range of 10 to 23 months' incarceration. His presentence investigation report recommended a sentence of 36 months' probation for the AWIGBH charge and 12 months in jail for the aggravated domestic violence charge. At sentencing, the prosecution asked that the trial court depart from the guidelines and sentence Balenda to prison because the guidelines did not account for the permanent injury to the victim, or the permanent physical toll Balenda's actions took on victim.

The trial court agreed and sentenced Balenda to a minimum sentence outside his guidelines range. The trial court found that the guidelines did not adequately account for the fact that the victim lost her right eye, and that the assault would have a lifelong impact on her. The trial court sentenced Balenda to 36 months to 120 months imprisonment for the AWIGBH conviction with credit for 370 days served, and 12 months for the aggravated domestic violence charge with credit for 370 days served, to run concurrently. This appeal followed.

## II. MOTION FOR DIRECTED VERDICT

Balenda argues that the prosecution failed to provide sufficient evidence that he intended to cause great bodily harm, and so the trial court erred by denying his motion for directed verdict. We disagree.

"This Court reviews de novo a trial court's decision on a motion for directed verdict to determine whether the prosecutor's evidence, viewed in the light most favorable to the prosecution, could persuade a rational trier of fact that the essential elements of the crime were proven beyond a reasonable doubt." *People v Martin*, 271 Mich App 280, 319-320; 721 NW2d 815 (2006). "All conflicts in the evidence are resolved in favor of the prosecution." *People v Stevens*, 306 Mich App 620, 628; 858 NW2d 98 (2014). "This Court will not interfere with the trier of fact's determinations regarding the weight of the evidence or the credibility of witnesses." *Id*.

Balenda argues that the prosecution did not provide sufficient evidence to prove he acted with the intent to cause great bodily harm[1] because he struck the victim only with his fists. However, viewed in a light most favorable to the prosecution, there was sufficient evidence to establish that Balenda acted with intent to inflict great bodily harm. The victim testified that Balenda woke her by screaming at her before he began to hit her in the eye. The victim also testified that Balenda hit her repeatedly and forcefully in the eye, and she tried to block him and begged him to stop. These circumstances would allow a reasonable jury to infer that Balenda intended to cause great bodily injury.

And although the prosecution was not required to show that any injury occurred, Balenda's assault caused the victim's right eye to rupture and hemorrhage, leading to blindness in that eye. The extent of her injuries is circumstantial evidence that Balenda intended great bodily harm. See *Stevens*, 306 Mich App at 629 (citations omitted) ("[I]ntent to cause serious harm can be inferred from the defendant's actions" and "[a]lthough actual injury to the victim is not an element of the crime, injuries suffered by the victim may also be indicative of a defendant's intent . . . ."). Expert testimony was provided that these injuries were from repeated trauma to the area and would not result from an accidental fall on the face, which provided additional circumstantial evidence that the jury could use to infer Balenda's intent. The prosecution provided sufficient evidence for the jury to determine that Balenda intended to cause great bodily harm. Accordingly, the trial court did not err when it denied Balenda's motion for directed verdict.

## III. OV 7

Balenda argues that because punching the victim six times was not brutality exceeding the usual brutality of the offense, the trial court erred when it assessed 50 points for OV 7. We disagree.

---

[1] "The elements of AWIGBH are '(1) an attempt or threat with force or violence to do corporal harm to another (an assault), and (2) an intent to do great bodily harm less than murder.' " *Stevens*, 306 Mich App at 628, quoting *People v Parcha*, 227 Mich App 236, 239; 575 NW2d 316 (1997).

When reviewing scoring of the sentencing guidelines, the trial court's factual determinations are reviewed for clear error and must be supported by a preponderance of the evidence. *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013). Clear error occurs if "the reviewing court is left with a definite and firm conviction that the trial court made a mistake." *People v Johnson*, 502 Mich 541, 565; 918 NW2d 676 (2018) (quotation marks and citation omitted). "Whether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute, i.e., the application of the facts to the law, is a question of statutory interpretation, which an appellate court reviews de novo." *Hardy*, 494 Mich at 438.

When a victim is treated with "sadism, torture, excessive brutality, or similar egregious conduct designed to significantly increase the fear and anxiety a victim suffered during the offense," 50 points must be assessed for OV 7. MCL 777.37(1)(a). "For purposes of OV 7, excessive brutality means savagery or cruelty beyond even the 'usual' brutality of a crime." *People v Rosa*, 322 Mich App 726, 743; 913 NW2d 392 (2018) (quotation marks and citation omitted). The relevant inquiries in scoring OV 7 are "(1) whether the defendant engaged in conduct beyond the minimum required to commit the offense; and if so, (2) whether the conduct was intended to make a victim's fear or anxiety greater by a considerable amount." *Hardy*, 494 Mich at 443-444.

When assessing 50 points for OV 7, the trial court stated:

So, the testimony from the trial was that things in the bedroom were broken, the TV was thrown off, the door was broken, clearly there was a lot of violence happening that evening. There was blood all over the bathroom, where the victim went to try and wash herself off before she caught a glimpse of herself in the mirror and realized how serious her injuries were. And then, blood throughout the house as she made her way out of the house and to the neighbors. The injuries that were sustained here—I mean, this is the worse [sic] I've seen in a non-murder case, and they're—she lost her eyeball. You beat her so badly that she ruptured her eyeball and broke the bones around her eye and now she has a glass eye.

The—I do believe that it is properly scored at 50 points for excessive brutality. It's not—certainly, not torture and I don't—I don't—saying [sic] that Mr. Balenda intended to increase her level of—of anxiety or fear, but it just was the severity of the beating was so severe that I do believe it does qualify as excessive brutality so I will score OV 7 at 50 points.

Balenda argues that the conduct of punching the victim six times in the eye was part of the elements of the AWIGBH offense, and so it did not exceed the usual brutality of the offense. However, a conviction of assault with intent to commit great bodily harm less than murder does not require that any injury actually occur. By repeatedly striking the victim in the eye and causing injury, Balenda necessarily increased the severity of the offense. See *People v Lydic*, 335 Mich App 486, 499; 967 NW2d 847 (2021).

Balenda also argues that because no weapon was used and he made no threats, his conduct did not involve excessive brutality. However, OV 7 does not require the use of a weapon or that threats are made. See *People v McFarlane*, 325 Mich App 507, 534; 926 NW2d 339 (2018) (holding OV 7 was properly scored where the defendant violently shook and threw the child victim

to the ground causing injuries); *People v James*, 267 Mich App 675, 680; 705 NW2d 724 (2005) (holding OV 7 was properly scored where the defendant stomped on the victim's face and chest after the defendant punched the victim unconscious). Further, the victim testified Balenda struck her multiple times "with a lot of force," that she could feel pain, and that she was frightened and "didn't know if [she] was gonna make it," and that she begged him to stop punching her but he was "on a mission" and no one was going to stop him. These facts establish by a preponderance of the evidence that Balenda intended to increase the victim's fear by a considerable amount.[2] We find no error in the scoring of OV 7 at 50 points.

## IV. DEPARTURE SENTENCE

Balenda argues that the trial court abused its discretion by sentencing him to a departure sentence that was disproportionate to the offense and the offender. We disagree that the court erred in its decision to depart upward, but remand for resentencing because the trial court failed to adequately support the extent of the departure sentence.

"A sentence that departs from the applicable guidelines range will be reviewed by an appellate court for reasonableness." *People v Lockridge*, 498 Mich 358, 392; 870 NW2d 502 (2015). When reviewing a sentence for reasonableness, the standard of review is for abuse of discretion. *People v Steanhouse*, 500 Mich 453, 471; 902 NW2d 327 (2017). "A trial court abuses its discretion if the imposed sentence is not 'proportionate to the seriousness of the circumstances surrounding the offense and the offender.'" *People v Ventour*, ___ Mich App ___, ___; ___ NW3d ___ (2023) (Docket No. 363922); slip op at 7 (citation omitted).

A trial court must consult and continue to take the advisory sentencing guidelines into account when sentencing. *Lockridge*, 498 Mich at 391. "[T]he key test is whether the sentence is proportionate to the seriousness of the matter, not whether it departs from or adheres to the guidelines' recommended range[.]" *Id*. at 475. Trial courts may "depart from the guidelines when, in their judgment, the recommended range under the guidelines is disproportionate, in either direction, to the seriousness of the crime." *People v Walden*, 319 Mich App 344, 352; 901 NW2d 142 (2017) (quotation marks and citation omitted). The trial court may consider, but is not limited to, the following factors:

> (1) the seriousness of the offense; (2) factors that were inadequately considered by the guidelines; and (3) factors not considered by the guidelines, such as the relationship between the victim and the aggressor, the defendant's misconduct while in custody, the defendant's expressions of remorse, and the defendant's potential for rehabilitation. [*Id*. at 352-353 (quotation marks and citation omitted).]

---

[2] To the extent the trial court believed it need not find both excessive brutality and the intent to increase the victim's fear, such a conclusion is not in keeping with the plain language of the statute. But because the trial court reached the right result despite not making this express finding, it is proper to affirm scoring OV 7 at 50 points. See *People v Cooper*, 328 Mich 159, 162; 43 NW2d 310 (1950) ("A correct result may be reached and affirmed, although based on a wrong reason . . . .").

## A. THE TRIAL COURT PROVIDED ADEQUATE REASONS TO SUPPORT A DEPARTURE

Balenda argues that he only punched the victim six times in the face and eye and that the seriousness of the offense was encompassed by the guidelines recommendation for the offense of assault with intent to commit great bodily harm. Balenda also argues that the sentence was disproportionate to the offense because OV 3 and OV 7 adequately accounted for his actions and the injuries sustained. We agree with Balenda that the guidelines scoring does account for some brutality and some psychological harm. What the trial court found, though, is that the guidelines did not do that adequately given the facts on this record.

Regarding whether the guidelines scoring accounts for the brutality of Balenda's actions, in this case, OV 3 was scored at 25 points. MCL 777.33(1)(c) directs the trial court to score 25 points for OV 3 where life-threatening or permanent incapacitating injury occurred to the victim. Here, scoring OV 3 at 25 points accounted for the permanent injury to the victim. Next, OV 4 was scored at 10 points. MCL 777.34 directs the trial court to score 10 points for OV 4 where "serious psychological injury requiring professional treatment occurred to a victim." The victim impact statement contained information that the victim suffered the physical, mental, and emotional trauma of losing her eye, felt depressed and suicidal, relapsed into alcohol addiction, now has PTSD, and needs lifelong therapy. OV 4 also accounted for the serious psychological injury to the victim. With OV 7 scored at 50 points, OV 7 accounted for the excessive brutality of Balenda's beating. We acknowledge that adding 85 points on to one's offense variable total is significant. The question is whether we think that the trial court's finding it was not significant enough is an abuse of discretion. Based on this record, we cannot so hold.

When determining Balenda's sentence, the trial court stated:

So, Mr. Balenda, you've had the opportunity now, as we all had to hear from [the victim], about the lifelong impact that your beating has caused her. It was a terribly violent brutal attack. I don't know what else happened, but you know, you were on a rage, and you caused her permanent injury, permanent disfigurement. And yeah, I don't think the guidelines necessarily adequately compensate for all that. It's – she's permanently lost vision in her eye. She had a prosthetic eye. . . . This was a clear beating. You just beat her because you were angry and you did it so severely that she's lost her eye. And [a] probation sentence is simply not appropriate in a circumstance like that.

I—I don't see where a *Cobbs* was ever given. I know there was a—a plea agreement . . . offered, but you know, frankly the reality is, you go through a trial, I see all the things that I might not see, you know, from a plea agreement, and hear the testimony, and you know, hear the story of this woman who had to run across the street naked to the neighbor's house to get help, covered in blood. And yeah, it's horrific. So, I don't feel that the guidelines are appropriate in that they—I don't believe they do adequately account for the acts that occurred and the damage that was caused.

Here, the trial court provided reasons on the record as to why a sentence beyond the guidelines was more proportionate to the offense and the offender than an in-guidelines sentence would be. See *Steanhouse*, 500 Mich at 475-476; *Walden*, 319 Mich App at 352. The trial court explained the reason for the departure from the guidelines was that probation was an inappropriate sentence given that Balenda's beating was so severe that it caused permanent vision loss. The trial court stated on the record: "I don't feel that the guidelines are appropriate in that they—I don't believe they do adequately account for the acts that occurred and the damage that was caused." The trial court explained on the record that even though the OV 3, OV 4, and OV 7 were scored, they still did not adequately account for the severity of the victim's injury. *Walden*, 319 Mich App at 352.

Based on this record, the trial court adhered to the "the key test . . . whether the sentence is proportionate to the seriousness of the matter . . . ." *Steanhouse*, 500 Mich at 475. But our analysis does not end here.

## B. THE TRIAL COURT FAILED TO ARTICULATE REASONS FOR THE EXTENT OF THE DEPARTURE

While we think the trial court adequately explained why a departure from the guidelines was warranted, the trial court failed to fulfill an additional legal requirement: to articulate on the record the reasons for the *extent* of the departure. See *Smith*, 482 Mich at 295 (where the trial court articulated adequate reasons to support a departure, but failed to justify the extent of the departure, the trial court abused its discretion and resentencing is required). This requirement is still alive post *Smith*. See *Steanhouse*, 500 Mich at 476 (if the trial court fails to provide adequate reasons for the extent of the departure sentence imposed, this Court must remand to the trial court for resentencing). Again, while the "key test is whether the sentence is proportionate to the seriousness of the matter, not whether it departs from or adheres to the guidelines' recommended range," *Steanhouse*, 500 Mich at 475, the extent of the departure is a necessary component to that analysis. In fact, *People v Milbourn*, 435 Mich 630, 660; 461 NW2d 1 (1990) contemplated the very scenario we have before us:

> Even where some departure appears to be appropriate, the extent of the departure (rather than the fact of the departure itself) may embody a violation of the principle of proportionality. See *People v McKinley*, 168 Mich App 496, 512; 425 NW2d 460 (1988) ("We do not dispute that a prison sentence—even a lengthy one—is in order. We conclude, however, that a fifteen-year minimum sentence for the events that occurred here is disproportionate to the specific acts committed and the danger involved. *Too frequently reasons are given for a sentence that apply equally to a lesser or greater sentence unless an explanation is offered on the record for the specific sentence given.* Such was the case here.") (Emphasis added.)

This record, while clear as to why a departure is appropriate, lacks an explanation as to why a sentence almost 1.5 times the maximum in the guidelines range is proportionate. This "hinders our appellate review of whether the sentence is reasonable." *People v Mason*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 367687); slip op at 5. Rather than substitute our own rationale, we are obligated to vacate Balenda's sentence and remand for resentencing.

-7-

Thus, we remand for resentencing because the trial court, although it provided reasons to support a departure, did not support the extent of its departure.

## V. CONCLUSION

We affirm Balenda's convictions, vacate his AWIGBH sentence, and remand for resentencing on that conviction. We do not retain jurisdiction.

/s/ Philip P. Mariani
/s/ Allie Greenleaf Maldonado
/s/ Adrienne N. Young