# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

MOHAMMAD MASROOR,

        Defendant-Appellant.

UNPUBLISHED
November 16, 2017

Nos. 322280; 322281; 322282
Wayne Circuit Court
LC No.  14-000869-01-FC;
        14-000858-01-FC;
        14-000857-01-FC

ON REMAND

Before: GLEICHER, P.J., and SAWYER and MURPHY, JJ.

PER CURIAM.

This case is before us on remand from the Supreme Court to review whether defendant's upward departure sentences for his 15 criminal sexual conduct (CSC) offenses are proportionate and reasonable under the standard set forth in *People v Milbourn*, 435 Mich 630, 636; 461 NW2d 1 (1990). See *People v Steanhouse*, 500 Mich 453; ___ NW2d ___ (2017) (*Steanhouse II*). As the trial court more than adequately justified the particular departure sentences imposed in this case, we affirm.

I

As noted in our previous opinion, defendant's minimum sentencing guidelines range was calculated at 108 to 180 months. The court ordered "that defendant serve a term of 35 to 50 years' imprisonment for each of the 10 counts of [CSC-I]. Defendant's minimum sentences exceed the maximum minimum sentences calculated under the guidelines by 20 years, or 133%." *People v Masroor*, 313 Mich App 358, 370; 880 NW2d 812 (2015) (*Masroor I*). Although we would have adopted a different test for considering the reasonableness of a sentence departing from the advisory legislative sentencing guidelines, we followed the test set forth in *People v Steanhouse*, 313 Mich App 1, 42-48; 880 NW2d 297 (2015) (*Steanhouse I*). *Masroor I*, 313 Mich App at 372-373. Specifically, we described our duty to

> review[] a departure sentence for "reasonableness" under an abuse-of-discretion standard governed by whether the sentence fulfills the "principle of proportionality" set forth in *Milbourn* "and its progeny." In a nutshell, *Milbourn*'s "principle of proportionality" requires a sentence "to be proportionate

-1-

to the seriousness of the circumstances surrounding the offense and the offender." *Milbourn*, 435 Mich at 636. *Milbourn* instructs that departure sentences "are appropriate where the guidelines do not adequately account for important factors legitimately considered at sentencing" so that the sentence range calculated under the guidelines "is disproportionate, in either direction, to the seriousness of the crime." *Id*. at 656-657. The *extent* of the departure must also satisfy the principle of proportionality. *Id*. at 660. [*Masroor I*, 313 Mich App at 373-374.]

We then summarized at great length the trial court's reasoning for imposing the particular departure sentences imposed. *Id*. at 374-377. We ultimately concluded that we were required to remand for resentencing, however:

> But even were we to find that the trial judge's allocution inadvertently satisfied *Milbourn*, we understand *Steanhouse* [*I*] to nevertheless require remand for a *Crosby* hearing.[1] The Court's language in *Steanhouse* [*I*] leaves little room for deferential review:
>
>> While the *Lockridge* Court did not explicitly hold that the *Crosby* procedure applies under the circumstances of this case, we conclude that this is the proper remedy when, as in this case, the trial court was unaware of, and not expressly bound by, a reasonableness standard rooted in the *Milbourn* principle of proportionality at the time of sentencing. [*Masroor I*, 313 Mich App at 377, quoting *Steanhouse I*, 313 Mich App at 48.]

In *Steanhouse II*, the Supreme Court considered the consolidated appeals from *Steanhouse I* and *Masroor I*. Relevant to the matters now before us, the Court accepted *Steanhouse I*'s adoption of the *Milbourn* test. *Steanhouse II*, 500 Mich at 471. But it agreed with our statement in *Masroor I*, 313 Mich App at 396, "that remand for a *Crosby* hearing in cases like that now before us unnecessarily complicates and prolongs the sentencing process." The Court continued:

> This Court adopted the *Crosby* remand procedure for a very specific purpose: determining whether trial courts that had sentenced defendants under the mandatory sentencing guidelines had their discretion impermissibly constrained by those guidelines. We specifically exempted departure sentences from that remand procedure, at least for cases in which the error was unpreserved, because a defendant who had received an upward departure could not show prejudice resulting from the constraint on the trial court's sentencing discretion. [*People v Lockridge*, 498 Mich 358, 395 n 31; 870 NW2d 502 (2015)] (stating that "[i]t defies logic that the court in those circumstances would impose a lesser sentence had it been aware that the guidelines were merely advisory").

---

[1] *United States v Crosby*, 397 F3d 103, 117-118 (CA 2, 2005).

Therefore, the purpose for the *Crosby* remand is not present in cases involving departure sentences. We therefore affirm the *Masroor* [*I*] panel's analysis to the extent that it rejected the *Steanhouse* [*I*] panel's decision to order a *Crosby* remand; the panel in *Steanhouse* [*I*] should have reviewed the departure sentence for an abuse of discretion, i.e., engaged in reasonableness review for an abuse of discretion informed by the "principle of proportionality" standard. We therefore remand these cases to the Court of Appeals to consider the reasonableness of the defendants' sentences under the standards set forth in this opinion. If the Court of Appeals determines that either trial court has abused its discretion in applying the principle of proportionality by failing to provide adequate reasons for the extent of the departure sentence imposed, it must remand to the trial court for resentencing. See *Milbourn*, 435 Mich at 665 (stating that "[i]f and when it is determined that a trial court has pursued the wrong legal standard or abused its judicial discretion according to standards articulated by the appellate courts, it falls to the trial court, on remand, to exercise the discretion according to the appropriate standards"); [*People v Smith*, 482 Mich 292, 304; 754 NW2d 284 (2008)] (noting that "an appellate court cannot conclude that a particular substantial and compelling reason for departure existed when the trial court failed to articulate that reason"). [*Steanhouse II*, 500 Mich at 475-476.]

II

Following the Supreme Court's remand, we took supplemental briefing from the parties. We now find that the trial court acted within its discretion and imposed proportional and reasonable upward departure sentences for defendant's 10 CSC-I and five CSC-II convictions.

The starting point for evaluating the reasonableness of defendant's sentences is *Milbourn*. Finding that the Legislature "clearly expressed its value judgments concerning the relative seriousness and severity of individual criminal offenses," the Court in *Milbourn* opined that the "statutory sentencing scheme embodies the 'principle of proportionality,' " which requires that criminal offenses be punishable by "sentences [that] are proportionate to the seriousness of the matter for which punishment is imposed." *Milbourn*, 435 Mich at 635. In other words, "the Legislature . . . intended more serious commissions of a given crime by persons with a history of criminal behavior to receive harsher sentences than relatively less serious breaches of the same penal statute by first-time offenders." *Id.* The means to effectuate this purpose was identified as "requiring judicial sentencing discretion to be exercised according to the same principle of proportionality that has guided the Legislature in its allocation of punishment over the entire spectrum of criminal behavior." *Id.* at 635-636. Thus, a court abuses its discretion in imposing sentence "if that sentence violates the principle of proportionality, which requires sentences imposed by the trial court to be proportionate to the seriousness of the circumstances surrounding the offense and the offender." *Id.* at 636.

The *Milbourn* Court emphasized "that the purpose of the Legislature in creating sentence ranges and, thereby, providing for discretion in sentencing was to allow the principle of proportionality to be put into practice." *Id.* at 651-652. While recognizing the subjective components involved that lead to unjustified disparity in sentencing, the Court cautioned, with respect to the "principle of proportionality," "that the imposition of the maximum possible

sentence in the face of compelling mitigating circumstances would run against this principle and the legislative scheme," resulting in an "abuse of discretion." *Id.* at 653. Thus, to properly effectuate the discretion afforded by the Legislature, a trial court should "not . . . apply[] its own philosophy of sentencing," but rather "determin[e] where, on the continuum from the least to the most serious situations, an individual case falls and by sentencing the offender in accordance with this determination." *Id.* at 653-654.

In ascertaining a methodology to apply the principle of proportionality, the *Milbourn* Court opined that "[t]he guidelines represent the actual sentencing practice of the judiciary," and comprise "the best 'barometer' of where on the continuum from the least to the most threatening circumstances a given case falls." *Id.* at 656. The guidelines were intended "to reflect actual sentencing practice," with trial judges being permitted "to depart from the guidelines when, in their judgment, the recommended range under the guidelines is disproportionate, in either direction, to the seriousness of the crime." *Id.* at 657. Thus, the guidelines were characterized as "a useful tool" in determining "the seriousness and harmfulness of a given crime and given offender within the . . . authorized range of punishments." *Id.* at 657-658. The Court stated that departure sentences are "appropriate where the guidelines do not adequately account for important factors legitimately considered at sentencing." *Id.* at 657.

In application, the *Milbourn* Court found that "departures from the guidelines, unsupported by reasons not adequately reflected in the guidelines variables, should . . . alert the appellate court to the possibility of a misclassification of the seriousness of a given crime by a given offender and a misuse of the . . . sentencing scheme." *Id.* at 659. The Court explained:

> Where there is a departure from the sentencing guidelines, an appellate court's first inquiry should be whether the case involves circumstances that are not adequately embodied within the variables used to score the guidelines. A departure from the recommended range in the absence of factors not adequately reflected in the guidelines should alert the appellate court to the possibility that the trial court has violated the principle of proportionality and thus abused its sentencing discretion. Even where some departure appears to be appropriate, the extent of the departure (rather than the fact of the departure itself) may embody a violation of the principle of proportionality. See *People v McKinley*, 168 Mich App 496, 512; 425 NW2d 460 (1988) ("We do not dispute that a prison sentence—even a lengthy one—is in order. We conclude, however, that a fifteen-year minimum sentence for the events that occurred here is disproportionate to the specific acts committed and the danger involved. Too frequently reasons are given for a sentence that apply equally to a lesser or greater sentence unless an explanation is offered on the record for the specific sentence given. Such was the case here.") [*Milbourn*, 435 Mich at 659-660 (emphasis omitted).]

An example of a relevant factor that may not be adequately reflected by the guidelines was identified as "[a] prior relationship . . . between the victim and the offender," which could serve as either a "mitigating circumstance or a[n] . . . aggravating circumstance[.]" *Id.* at 660-661.

To permit the continued evolution of the guidelines, trial court judges must "remain entitled to depart from the guidelines if the recommended ranges are considered an inadequate

reflection of the proportional seriousness of the matter at hand." *Id.* at 661. The Court identified the "key test" as being "whether the sentence is proportionate to the seriousness of the matter, not whether it departs from or adheres to the guidelines' recommended range." *Id.*

Subsequently, in *Smith*, 482 Mich at 292, our Supreme Court provided an example regarding the practical application of the principle of proportionality. The *Smith* Court emphasized the need for "a rationale for the sentences . . . imposed," and required trial courts to also "establish why the sentences imposed were proportionate to the offense and the offender." *Id.* In other words, the Court stated that a sentencing judge must "articulate[] adequate reasons to support *a* departure" in conjunction with the need "to justify the extent of the departure." *Id.* In turn, the Court explained that a departure cannot be based "on an offense characteristic or offender characteristic already taken into account in determining the appropriate sentence range unless the court finds from the facts contained in the court record, including the presentence investigation report, that the characteristic has been given inadequate or disproportionate weight." *Id.* at 300, quoting MCL 769.34(3)(b).

Although dealing with statutory language referencing MCL 769.34, which is no longer applicable due to *Lockridge*, 498 Mich at 391 (regarding substitution of the words "may" for "shall"), the *Smith* Court's guidance with regard to appellate review and provision of a methodology to effectuate the principle of proportionality remains relevant. Addressing appellate review of departure sentences, the *Smith* Court stated:

> Appellate courts are obliged to review the trial court's determination that a . . . reason exists for departure. Accordingly, the trial court's justification "must be sufficient to allow for effective appellate review." In [*People v Babcock*, 469 Mich 247, 258-259; 666 NW2d 231 (2003)], this Court explained that an appellate court cannot conclude that a particular . . . reason for departure existed when the trial court failed to articulate that reason. Similarly, if it is unclear why the trial court made a particular departure, an appellate court cannot substitute its own judgment about why the departure was justified. A sentence cannot be upheld when the connection between the reasons given for departure and the extent of the departure is unclear. When departing, the trial court must explain why the sentence imposed is more proportionate than a sentence within the guidelines recommendation would have been. [*Smith*, 482 Mich at 304 (citations omitted).]

Also identified as assisting appellate review of the proportionality of a departure sentence is "when a court explains the similarity between the facts justifying the departure and the facts describing a crime meriting the same sentence under the guidelines. A comparison of a defendant's characteristics and those of a hypothetical defendant whose recommended sentence is comparable to the departure sentence is a valuable exercise." *Id.* at 310.

In analyzing the proportionality of a defendant's departure sentence, the *Smith* Court suggested that a "potential means of offering . . . a justification [for a departure] is to place the specific facts of a defendant's crimes in the sentencing grid." *Id.* at 306. The Court reasoned that "reference to the grid can be helpful, because it provides objective factual guideposts that can assist sentencing courts to ensure that the offenders with similar offense and offender

characteristics receive substantially similar sentences," *id.* at 309 (quotation marks and citation omitted), and thus "minimize idiosyncrasies" in sentencing. *Id.* at 311. Importantly, the *Smith* Court emphasized that it was not suggesting "that trial courts must sentence defendants with mathematical certainty," and indicated that "precise words [are not] necessary . . . to justify a particular departure." *Id.* Additional factors recognized post-*Lockridge* for consideration under the "proportionality standard" have been found to include, but are not limited to:

> (1) the seriousness of the offense . . ., (2) factors that were inadequately considered by the guidelines . . ., (3) factors not considered by the guidelines, such as the relationship between the victim and the aggressor . . ., the defendant's misconduct while in custody . . ., the defendant's expressions of remorse . . ., and the defendant's potential for rehabilitation. [*People v Walden*, 319 Mich App 344, 352-353; ___ NW2d ___ (2017), lv pending, citing *Steanhouse I*, 313 Mich App at 46.]

The next step is to apply the above criteria and considerations to the facts of this case to determine the proportionality of defendant's departure sentences. The starting point in this analysis is the scoring of the various prior record variables (PRVs) and offense variables (OVs) in the sentencing guidelines.

Defendant's original PRV score was 0 points, but was amended with the parties and the trial court agreeing that 20 points should be assessed for PRV 7, placing defendant in PRV Level C.[2] OV 4 (psychological injury to a victim) is governed by MCL 777.34. The trial court increased the OV 4 score from 0 to 10 points to reflect "[s]erious psychological injury requiring professional treatment occurred to a victim." MCL 777.34(1)(a). For OV 9 (number of victims), MCL 777.39(1), the trial court reduced defendant's original score from 10 points to 0 points because, although there were multiple victims, none of the victims was placed into jeopardy of danger or physical injury while in the presence of another victim. The court increased the scoring of OV 10 (exploitation of a vulnerable victim), MCL 777.40, from 10 points to 15 points to reflect that the crimes involved "predatory conduct." MCL 777.40(1)(a), (b). The trial court determined that OVs 11 and 12 were incorrectly scored at 50 points and 25 points, respectively. OV 11 considers criminal sexual penetrations, MCL 777.41, whereas OV 12 considers contemporaneous felonious criminal acts, MCL 777.42. The trial court increased defendant's score for OV 13, MCL 777.43, from 0 points to 50 points to reflect that "the sentencing offense is first degree criminal sexual conduct." MCL 777.43(a)(1) and (2)(d). Finally, the court reduced the score for OV 17 (degree of negligence exhibited), MCL 777.47, from 5 points to 0 points. Before the adjustments to the variables, defendant's scores placed him in PRV Level A and OV Level VI, resulting in a sentencing guidelines range of 108 to 180 months under the

---

[2] MCL 777.57 pertains to "subsequent or concurrent felony convictions," with MCL 777.57(1)(a) requiring that 20 points be assessed if "[t]he offender has 2 or more subsequent or concurrent convictions." Defendant's 14 contemporaneous criminal convictions met and exceeded the statutory criteria to justify this score.

applicable sentencing grid, MCL 777.62. As a result of the scoring changes, defendant was placed in PRV Level C and OV Level IV, which did not alter his guidelines range. MCL 777.62.

Based on the factual circumstances of this case and defendant's multiple convictions, the trial court expressed the need to depart from the guidelines range, ultimately concurring with the prosecutor's suggestion that defendant be sentenced to 35 to 50 years' imprisonment for each CSC-I conviction. In electing to depart from the guidelines range, the trial court explicitly recognized "the proportionality factor" and suggested that the PRVs and OVs failed to sufficiently reflect the factual circumstances in this case. The court referenced PRV 7, MCL 777.57(1)(a), which allows for a maximum of 20 points if "[t]he offender has 2 or more subsequent or concurrent convictions." The court observed that defendant had *14* CSC contemporaneous convictions, well beyond the two necessary to justify a 20-point score. Based on "the verdict alone," the court reasoned, "we can easily score 140 [points] on PRV 7 which would just all by itself push the defendant way over into the top grid on his PRV points."

In relation to OV 4, the court indicated that MCL 777.34 did not reflect that three victims were involved in this matter, stating: "OV 4, psychological injury occurred to a victim, ten points. Well, it occurred to three victims. So we could . . . theoretically give him . . . 30 points if we were using OV 4 as a springboard for a proportionality description of a departure reason. And that's objective and verifiable. There were three victims." Similarly, the trial court determined that OV 13, MCL 777.43, failed to adequately reflect the extent of the crimes in this case. "[T]he pattern of criminal activity" involving three or more sexual penetrations against a person, the trial evidence and the jury's verdict demonstrated that there were vastly more than three acts of CSC that occurred with each of the three victims, which were "objective and verifiable."

Increasing the PRV and OV scores would place defendant in a higher cell range; defendant would be at PRV Level F and OV Level VI. As the trial court observed, "If we were to give the defendant just 25 more points on the [OVs] which can easily be calculated with 30 points on OV 4, more points on OV 13, that pushes him solidly into the bottom right-hand cell range of 270 to 450."

The trial court's explanation for why the scoring of the PRVs and OVs did not adequately reflect defendant's circumstances and the seriousness of the offenses supports the imposition of a departure sentence. Moreover, in an effort to explain or justify the particular departure sentence imposed, and the extent of the departure from the guidelines range, the court discussed other factors deemed relevant to its departure from the guidelines range, and it endeavored to determine how these factors would comparatively extend the sentencing grid in accordance with *Smith*, 482 Mich at 310. The court's methodology comports with the concept of proportionality.

The trial court identified and considered several factors. First, the court recognized the seriousness of the offenses. *Walden*, 319 Mich App at 353. As noted, the trial court opined that defendant's conduct involved "one of the most horrific and horrible sexual abuse crimes I've seen on so many levels." Particularly noteworthy were the multiple levels of relationships that existed between defendant and his three victims. *Id.* at 352-353; *Milbourn*, 435 Mich at 660-661. Specifically, defendant was a blood relative of the three victims and simultaneously served as a teacher and religious leader in this family. The trial court stated: "[I]t wasn't just the uncle

and niece [relationship], it was the uncle slash religious leader and cultural leader and nieces who were victims of his religious orthodoxy as well as his sexual predatory conduct." Defendant's status as an imam was deemed a significant factor, as demonstrated by an objectively observable effect on the victims and evincing a "really tenacious hold on their . . . religious beliefs and their cultural traditions." As explained by the trial court:

> [The] sexual violations that they experienced, their own sort of superstition about how that would be consequential in their lives and what would happen to them if anybody found out, and that they had to respect their, their uncle, the imam, even while he was sexually assaulting them really makes this case especially uniquely horrible in terms of their – of the psychological impact that these crimes had on them, and, and the great trauma that they obviously were experiencing just in testifying in this case many years after the fact.

Defendant's poor potential for rehabilitation and lack of remorse, *Walden*, 319 Mich App at 353, further justified the departure sentence. Defendant's five children testified at trial, relating incidents of sexual assault against them similar in kind and character to those perpetrated against the victims in this case. This comprises a factor separate and distinct from the scoring of OV 10, MCL 777.40, regarding defendant's predatory behavior, because his sexual assaults of his children were not considered in the scoring of OV 10 and instead are relevant to defendant's rehabilitative potential, or lack thereof. In addition, when given the opportunity for allocution at sentencing, defendant, using an interpreter, expressed no remorse for his actions, but requested that the court show him "mercy," and stated, "I didn't do anything," serving to further exemplify and call into question his rehabilitative potential.

Another factor touched upon at sentencing pertains to the severity of the crime, as reflected by the statutory penalty for CSC-I. After the offenses were committed, MCL 750.520b was amended to require a statutory minimum sentence for adults convicted of CSC-I against children. As amended, MCL 750.520b(2) provides:

> [CSC-I] is a felony punishable as follows:
>
> (a) Except as provided in subdivisions (b) and (c), by imprisonment for life or for any term of years.
>
> (b) For a violation that is committed by an individual 17 years of age or older against an individual less than 13 years of age by imprisonment for life or any term of years, but not less than 25 years.
>
> (c) For a violation that is committed by an individual 18 years of age or older against an individual less than 13 years of age, by imprisonment for life without the possibility of parole if the person was previously convicted of a violation of this section or section 520c, 520d, 520e, or 520g committed against an individual less than 13 years of age or a violation of law of the United States, another state or political subdivision substantially corresponding to a violation of this section or section 520c, 520d, 520e, or 520g committed against an individual less than 13 years of age.

(d) In addition to any other penalty imposed under subdivision (a) or (b), the court shall sentence the defendant to lifetime electronic monitoring under section 520n.

(3) The court may order a term of imprisonment imposed under this section to be served consecutively to any term of imprisonment imposed for any other criminal offense arising from the same transaction.

Although defendant was not subject to a mandatory minimum sentence because the offenses were committed before the statute was amended, the current mandatory minimum sentence required by MCL 750.520b(2)(b) serves to highlight the seriousness of the offense and supports the court's decision to impose a departure sentence. It is also relevant in evaluating the extent of the court's departure from the guidelines range. While the degree of departure for defendant's sentence is significant, the difference between the sentence imposed and the current statutory requirement is considerably less than when defendant's departure sentence is compared to the unmodified guidelines range.

In conclusion, the trial court sufficiently explained and justified both its imposition of a departure sentence and the extent of the departure imposed. The court's explanation and analysis adhered to the principle of proportionality by demonstrating that the circumstances regarding the characteristics of the offenses and the offender were "not adequately embodied within the variables used to score the guidelines." *Milbourn*, 435 Mich at 659. Additional factors, such as the relationship between defendant and his victims, serve to further support the sentences imposed and their reasonableness. Defendant had 15 concurrent convictions of CSC-I and CSC-II, involving three victims under 13 years of age. The victims were defendant's blood relatives. Defendant's sexual abuse of the three victims violated not only any familial trust that should have been sacrosanct, but also violated his role as the children's teacher, religious leader, and religious authority. The abuse was repetitive and prolonged, and defendant threatened his victims with various repercussions should they disclose the abuse. Evidence was adduced that the three victims involved in this matter were part of a larger predatory history, which involved defendant's similar abuse of his own five children. The risk posed by defendant, given his acknowledged lack of remorse and inability to discern the disturbing and wrongful nature of his conduct, raised special concerns regarding the need for his imprisonment. Although defendant's departure sentences are significant, they were was justified, proportional, and reasonable.

We affirm.

/s/ Elizabeth L. Gleicher
/s/ David H. Sawyer
/s/ William B. Murphy

-9-