# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

UNPUBLISHED
May 22, 2018

v

ROBERT JENSEN SCHWANDER,

Defendant-Appellant.

No. 320768
Grand Traverse Circuit Court
LC No. 2011-011239-FC

ON REMAND

Before: GLEICHER, P.J., and K. F. KELLY and SERVITTO, JJ.

PER CURIAM.

This case returns to us on remand from the Supreme Court. The issue presented is the propriety of defendant Robert Schwander's departure sentence under *People v Lockridge*, 498 Mich 358; 870 NW2d 502 (2015), and *People v Milbourn*, 435 Mich 630; 461 NW2d 1 (1990). We vacate the sentence and remand for resentencing.

I

A jury convicted Schwander of second-degree murder. Grand Traverse Circuit Court Judge Thomas Power sentenced Schwander to a 40 to 70 year term of imprisonment. This sentence substantially exceeded the sentencing guidelines' minimum sentence range of 162 to 270 months (13½ to 22½ years).

Schwander's first appeal challenged the scoring of six offense variables. He further contended that the trial court abused its discretion by imposing a disproportionate sentence and by failing to articulate substantial and compelling reasons justifying the departure and its extent. A different panel of this Court upheld the guidelines scores but found inappropriate several of the trial court's stated reasons for its departure from the guidelines. *People v Schwander*, unpublished per curiam opinion of the Court of Appeals, issued January 31, 2013 (Docket No. 307921) (*Schwander I*). Two reasons for a departure sentence survived scrutiny: Schwander failed to call for medical help after stabbing and mortally wounding the victim, and he betrayed the trust of the victim's family, which had taken him in after his parents asked him to leave their home. But because the trial court failed to justify a departure of 17½ years, nearly double the upper guideline range, the panel retained jurisdiction and remanded for resentencing.

-1-

On remand, Judge Power declined to offer any additional reasons for the departure and instead sentenced defendant to 38 to 70 years' imprisonment, concluding, " 'The undersigned is hopeful that this substantial reduction in the Defendant's sentence will prove satisfactory to the Court of Appeals.' " *People v Schwander*, unpublished per curiam opinion of the Court of Appeals, issued July 21, 2015 (Docket No. 320768) (*Schwander II*), unpub op at 2. Two members of the previous panel were not assuaged. They vacated Schwander's sentence and remanded for resentencing before a different judge.

Judge Philip Rodgers reinstated Judge Power's original departure sentence of 40 to 70 years' imprisonment. A majority of the present panel concluded that Judge Rodgers "failed to articulate legally cognizable grounds justifying the extent of the substantial departure sentence . . . imposed," and again remanded for resentencing. *Id*. at 1. And "[t]o preserve the appearance of fairness" we ordered that a different judge determine Schwander's sentence. *Id*. The panel rejected Schwander's other arguments, specifically that: (1) Judge Rodgers should have recused himself, (2) Michigan's legislative sentencing scheme violated the Sixth Amendment (we decided this issue before the Supreme Court released its opinion in *Lockridge*), and (3) the previous panel improperly adjudicated his offense variable scoring challenges. *Id*. at 5-7.

The prosecutor sought leave to appeal in the Supreme Court, which placed the appeal in abeyance pending its decision "in the cases of *People v Steanhouse* (Docket No. 152849) and *People v Masroor* (Docket Nos. 152946-8) . . . ." *People v Schwander*, ___ Mich ___; 879 NW2d 251 (2016). The Supreme Court subsequently entered an order stating:

> On order of the Court, . . . the application is again considered and, pursuant to MCR 7.305(H)(1) and MCR 7.316(A)(7), in lieu of granting leave to appeal, we vacate the judgment of the Court of Appeals and we remand this case to the Court of Appeals for reconsideration in light of [*People v Steanhouse*, 500 Mich 453; 902 NW2d 327 (2017) (*Steanhouse II*),] and *People v Lockridge*, 498 Mich 358 (2015). [*People v Schwander*, 501 Mich 918; 903 NW2d 190.]

On reconsideration, we find that Judge Rodgers abused his discretion by imposing a departure sentence unreasonable and disproportionate in extent, and again remand for resentencing.

II

We first consider the role of *People v Lockridge* in our analysis of whether resentencing is required.

Schwander raised a Sixth Amendment challenge to his departure sentence in his second appeal. When we issued our decision, we were bound by this Court's opinion in *People v Herron*, 303 Mich App 392, 404; 845 NW2d 533 (2013), which held that "the exercise of judicial discretion guided by the sentencing guidelines scored through judicial fact-finding does not violate due process or the Sixth Amendment right to a jury trial." The Supreme Court reached the opposite conclusion in *Lockridge*, proclaiming that Michigan's sentencing guidelines scheme violated the Sixth Amendment of the United States Constitution because it required

judicial fact-finding beyond any facts admitted by a defendant or found by the jury. *Lockridge*, 498 Mich at 388-389.

To remedy that violation, the Supreme Court deemed the guidelines merely advisory rather than mandatory. *Id*. at 391. *Lockridge* instructed that sentences potentially tainted by judicial fact-finding are subject to reconsideration under the remand procedure described in *United States v Crosby*, 397 F3d 103 (CA 2, 2005). But the Supreme Court exempted departure sentences from such remands "because a defendant who had received an upward departure could not show prejudice resulting from the constraint on the trial court's sentencing discretion." *Steanhouse II*, 500 Mich at 475. In *Steanhouse II*, the Supreme Court directed that when evaluating a departure sentence this Court must "engage[] in reasonableness review for an abuse of discretion informed by the 'principle of proportionality' standard" regardless of whether the *Lockridge* error was preserved (as here) or unpreserved. *Id*. at 476, see also *id*. at 475 n 16.

Guided by *Lockridge*, we find meritorious Schwander's Sixth Amendment argument to the extent that it advances the general proposition that the guidelines system under which he was sentenced was constitutionally flawed. Because Judges Power and Rodgers imposed departure sentences, Schwander cannot show that he was prejudiced by any *Lockridge* errors in the scoring of his guidelines. *Lockridge*, 498 Mich at 394. We find *Lockridge* otherwise unhelpful in sorting out the propriety of defendant's sentence, and turn to a reasonableness review.

II

As directed by the Supreme Court, we consider whether Schwander's departure sentence was reasonable under the proportionality standard articulated in *Milbourn*, 435 Mich at 636, applying an abuse of discretion standard of review.

*Milbourn* requires that a sentencing court exercise its discretion "according to the same principle of proportionality that guides the Legislature in its allocation of punishment over the full spectrum of criminal behavior." *Id*. at 651. A judge accomplishes this task by fashioning a sentence that takes into account "the nature of the offense and the background of the offender." *Id*. The sentencing guidelines provide the starting point for a proportionality analysis and an overall frame of reference for reasonableness review.

*Milbourn* emphasized that the Legislature's purpose in creating guidelines sentencing ranges "was to allow the principle of proportionality to be put into practice." *Id*. at 651-652. In promulgating the guidelines the Legislature "clearly expressed its value judgments concerning the relative seriousness and severity of individual criminal offenses." *Id*. at 635. The guidelines also take in to account the character of the offender by requiring that "persons with a history of criminal behavior [] receive harsher sentences" than "first-time offenders" who violate the same criminal statute. *Id*. Although sentencing is an inherently subjective process, the principle of proportionality would be violated by "the imposition of the maximum possible sentence in the face of compelling mitigating circumstances. . . ." *Id*. at 653.

In *Milbourn*, 435 Mich at 659, the Court directed that "departures from the guidelines, unsupported by reasons not adequately reflected in the guidelines variables, should . . . alert the

appellate court to the possibility of a misclassification of the seriousness of a given crime by a given offender and a misuse of the . . . sentencing scheme." The Court explained:

> Where there is a departure from the sentencing guidelines, an appellate court's first inquiry should be whether the case involves circumstances *that are not adequately embodied within the variables used to score the guidelines*. A departure from the recommended range in the absence of factors not adequately reflected in the guidelines should alert the appellate court to the possibility that the trial court has violated the principle of proportionality and thus abused its sentencing discretion. [*Id*. at 659-660 (emphasis added).]

The Supreme Court reemphasized in *Lockridge* and *Steanhouse II* that the guidelines remain "highly relevant" in a court's sentencing calculus. See *Lockridge*, 498 Mich at 391; *Steanhouse II*, 400 Mich at 475. The guidelines also play a critical role in our reasonableness review.

"[D]eparture sentences are appropriate," the *Milbourn* Court observed, "where the guidelines do not adequately account for important factors legitimately considered at sentencing." *Milbourn*, 435 Mich at 657. For example, a departure might be warranted in the case of a "one hundred-time repeat offender, since the guidelines do not take such extensive criminal records into account." *Id*. Similarly, a court may not depart from the guidelines range based on factors already taken into account by the guidelines unless the court articulates a legitimate reason for doing so. *Id*. at 660.

A departure's extent is also subject to reasonableness review. The Supreme Court observed in *Milbourn:*

> Even where some departure appears to be appropriate, the extent of the departure (rather than the fact of the departure itself) may embody a violation of the principle of proportionality. See *People v McKinley*, 168 Mich App 496, 512; 425 NW2d 460 (1988) ("We do not dispute that a prison sentence—even a lengthy one—is in order. We conclude, however, that a fifteen-year minimum sentence for the events that occurred here is disproportionate to the specific acts committed and the danger involved. *Too frequently reasons are given for a sentence that apply equally to a lesser or greater sentence unless an explanation is offered on the record for the specific sentence given*. Such was the case here.") (Emphasis added.) [*Milbourn*, 435 Mich at 660.]

This means that when imposing a departure sentence, a court must justify why the sentence imposed is more proportionate than a lesser sentence would have been. *People v Dixon Bey*, 321 Mich App 490, 525; ___ NW2d ___ (2017). The Supreme Court highlighted this requirement in *People v Smith*, 482 Mich 292, 304; 754 NW2d 284 (2008): "A sentence cannot be upheld when the connection between the reasons given for departure and the extent of the departure is unclear. When departing, the trial court must explain why the sentence imposed is more proportionate than a sentence within the guidelines recommendation would have been."

Guided by these principles, we begin by analyzing the reasons given by Judge Rodgers for imposing a departure sentence.

Judge Rodgers posited that the victim's life could have been saved had Schwander sought medical attention for her and that Schwander had betrayed the trust of the victim's family. In *Schwander II*, unpub op at 8, we agreed that both of these judge-found facts could support a departure. The sentencing guidelines do not account for these circumstances, and we continue to believe that they supply appropriate grounds for a departure.[1] Judge Rodgers also identified Schwander's "lack of remorse" as an appropriate departure consideration. We approved this reasoning in *Schwander II*, unpub op at 8, and reiterate that approval. Similarly, Schwander's "complete and utter disrespect" for the body of his victim is not accounted for in the guidelines and could serve as a departure ground.

Judge Rodgers additionally posited that a departure was warranted because after the victim disappeared, a 12-day search ensued that "generated reasonable community fear for the safety of other children." We rejected this ground for departure in *Schwander II*, unpub op at 9, because it was not "objective" under the standard that applied at the time we decided the case. See *People v Babcock*, 469 Mich 247, 270; 666 NW2d 231 (2003) ("[I]f a reason is not objective and verifiable, it cannot constitute a substantial and compelling reason."). "Community fear" is an inappropriate ground for departure under the *Milbourn* framework as well.

In *Milbourn*, 435 Mich at 649, the Court explained that its very purpose was to create a rule that would be "less subjective than the old rule," denominated the " 'shock the conscience' standard . . . ." The Supreme Court sought to replace an individual judge's subjective and possibly idiosyncratic sentencing views with more definite principles:

> While a measure of subjectivity in judicial decisions is unavoidable due to the differing personal backgrounds, experiences, and viewpoints of different members of the bench, a standard which is itself "one of complete subjectivity" has no more place on the appellate bench than in the trial court. A rule which contains no directives to the judges who must apply it—other than to encourage

---

[1] We remain unconvinced, however, that Schwander's failure to summon aid for his dying victim adds much relevant information to the circumstances of the offense or the character of the offender. A killer's failure to summon aid for a victim is the norm, not the exception. The New York Court of Appeals said it this way:

> [A] killing . . . is not transformed into depraved indifference murder simply because the killer does not summon aid for the victim. Otherwise, homicides would be routinely and improperly converted into depraved indifference murders whenever—as is often the case—the killer leaves the scene. [*People v Suarez*, 6 NY3d 202, 210; 811 NYS2d 267; 844 NE2d 721 (2005).]

That Schwander did nothing to save the victim's life after strangling or stabbing her evidenced his intent to kill her. His indifference to her fate explains, in part, his conviction for second-degree murder rather than involuntary manslaughter. We leave it to the next sentencing judge to determine the role of this fact in a proportionality analysis.

the rendering of decisions in accordance with personal value judgments—is a "rule" only in the weakest sense. [*Id.* at 645.]

Proportionality analysis grounded in the guidelines protects against "unjustified sentence disparity." *Id*. at 649.

Because the elimination of sentence disparity serves as an important sentencing goal, a judge should endeavor to "shield the process from passing sentence from the anger, fear, or prejudices of the community." *Schwander II*, unpub op at 9. We remain convinced that community reaction to a crime should not factor into proportionality analysis and find our previously expressed sentiment consistent with *Milbourn*:

By requiring judges to apply the sentencing guidelines, we encourage a punishment decision driven by rules rather than passions. Fidelity to the law requires that a judge blind himself to public clamor. The community's condemnation is subsumed in its verdict, the legislative sentencing guidelines, and the maximum sentences prescribed by statute. Enhancing punishment based on a community's outrage is an invitation to sentencing inequity. [*Id*.]

Nor have we changed our mind about Judge Rodgers's invocation of the "Department of Corrections' recommendation of an upward departure as a reason for his decision." *Id*. at 9 n 5. The trial court referred to this as a factor "of more modest importance . . . ." We view it as entirely irrelevant. A corrections officer's subjective view of an appropriate sentence is no more important or persuasive than that of a prosecutor, a defense attorney, or a juror. The responsibility for imposing a proportionate sentence rests solely with the trial court.

While Judge Rodgers identified several appropriate grounds for a departure, he failed to adequately explain why those grounds defined a sentence that was more proportionate to the offense and the offender than a guidelines sentence would have been.

Judge Rodgers instead relied on two alternate approaches to justify the extent of the departure. He first examined Schwander's background, adding points to Schwander's prior record variable (PRV) score, which was zero, to come to a new cell within the second-degree murder grid found in MCL 777.61. Although Judge Rodgers referenced several minor acts of misconduct that did not result in criminal charges,[2] he ultimately relied on three uncharged acts of third-degree criminal sexual conduct (CSC-3) arising from Schwander's relationship with his 15-year-old girlfriend to hypothetically "assess" 75 PRV points. Had those points been assessed,

---

[2] As we explained in our previous opinion, Judge Rodgers cited a purported threat to a corrections officer made after Schwander was taken into custody, his "escalating negative behavior [at] school[,]" and a number of alleged misdemeanors and low-severity felonies, including vandalism, the theft of electricity, and providing marijuana to a minor. *Schwander II*, unpub op at 3, 10-11. Judge Rodgers relied only on the uncharged acts of CSC-3, however, when addressing defendant's background. Unlike the acts of CSC-3, Judge Rodgers did not explain how any of the other acts justified the extent of the departure.

defendant's PRV level would have gone from the least serious, Level A, to the most serious, Level F. MCL 777.61. Envisioning defendant as a defendant within PRV level F, Judge Rodgers calculated a recommended sentencing range of 365 to 600 months. He then explained that defendant's OV score was 135, or 35% past the minimum number of points required to place him in the highest OV level under the applicable sentencing grid. See MCL 777.61. Judge Rodgers used this percentage to make an "analogous . . . mathematical[]" argument that defendant's minimum sentence should be 493 months, which is 35% more than 365 months.[3]

We rejected this rationale in our prior opinion and repeat our analysis here, as it corresponds to the *Milbourn* framework:

> Defendant's uncharged act of CSC-3 constitutes an offender characteristic accounted for in the guidelines. Defendant engaged in sexual activity with his girlfriend, who at the time was 15 years old. This misconduct supplied the factual basis for Judge Power's assessment of 25 points under OV 13. The 25-point score was the highest possible under OV 13.

> Moreover, had defendant actually been charged with and convicted of CSC-3, the highest minimum imprisonment term available under the guidelines for that offense likely would have not exceeded 40 months. And while defendant's "Romeo and Juliet" sexual relationship with his 15-year-old girlfriend was illegal, similar offenders almost always receive a probationary sentence.

> The sentencing court may not base a departure "on an offense characteristic or offender characteristic already taken into account in determining the appropriate sentence range unless the court finds from the facts contained in the court record, including the presentence investigation report, that the characteristic has been given inadequate or disproportionate weight." MCL 769.34(3)(b). Not only was defendant's CSC-3 incorporated within the calculation of OV 13, it is simply not "compelling" or of "considerable worth" in evaluating the need for a lengthy departure sentence. And Judge Rodgers neglected to elucidate why the 25 points scored for OV 13 were inadequate to punish this uncharged misconduct. [*Schwander II*, unpub op at 10.]

While MCL 769.34(3)(b) may no longer apply, it remains inappropriate to justify a departure on reasons adequately accounted for by the sentencing guidelines. *Dixon-Bey*, 321

---

[3] This mathematical exercise is inconsistent with the logic of the grid. The second-degree murder grid found in MCL 777.61 divides a defendant's OV level into three categories: Level I (0-49 points), Level II (50-99 points), and Level III (100 or more points). In other words, each OV Level represents an increase of 50 points. Thus, if a fourth level were to be added to this grid, Level III would cover scores of 100 to 149 points, and the next level would apply to OV scores of 150 or more points. But even if our Legislature had created a fourth OV range, Schwander's OV score of 135 points would still place him in the same range of 365 to 600 months.

Mich App at 525. Thus, we reiterate that Judge Rodgers inappropriately relied on factors already accounted for in the sentencing guidelines to justify the extent of the departure without explaining why the scoring of OV 13 was inadequate.

Further, Judge Rodgers attempted to justify an upward departure of 17½ years by reference to a consensual sexual relationship rendered illegal solely by the age of the female participant, who was 15 instead of the required 16 years of age. MCL 750.520d(1)(a). Judge Rodgers failed to explain why this misconduct warranted an extreme departure considering that prosecutions arising from similar relationships generally result in probation, not 17½ additional years in prison.[4] Nor was the relationship indicative of an irredeemably violent character. The relationship afforded Judge Rodgers with "no basis to conclude that defendant was a 'recidivist . . . criminal' that deserved a 'greater . . . punishment' than that contemplated by the guidelines." *Dixon-Bey*, 321 Mich App at 525, quoting *Smith*, 482 Mich at 305.

Judge Rodgers based his second attempt to justify the extent of the departure on his conclusion that defendant had actually committed first-degree murder. *Schwander II*, unpub op at 10. This was exactly contrary to the jury's verdict. While the prosecutor argued that Schwander planned to murder the victim, the jury rejected this position by returning a second-degree murder verdict. *Id*. at 2. We previously expressed reservations regarding whether the Sixth Amendment permits a departure premised on acquitted conduct, but ultimately, "reserve[d] for another day the question whether a Michigan judge may nullify a jury's verdict to enhance a defendant's sentence." *Id*. at 10-11. We instead explained that whether defendant "premeditated or deliberated Carly's death [was] not objectively verifiable, and therefore cannot justify a departure." *Id*. at 11. This reasoning is no longer viable.

We instead adopt the analysis proposed in *Dixon-Bey*, another case in which a sentencing court rejected a jury's conclusion that a defendant committed second-degree murder, departing based on a personal belief that the crime was actually first-degree murder.

The *Dixon-Bey* Court observed that offense variable 6 addresses a defendant's intent to kill or injure another individual, and precludes scoring 50 points, the highest possible number,

---

[4] Even the *maximum* term of imprisonment permitted by statute is less than the 17½ years by which Judge Rodgers departed from the sentencing guidelines in fashioning defendant's *minimum* sentence in this case. See MCL 750.520d(2) ("Criminal sexual conduct in the third degree is a felony punishable by imprisonment for not more than 15 years.").

Further, to comply with the two-thirds rule of *People v Tanner*, 387 Mich 683; 199 NW2d 202 (1972), and MCL 769.34(2)(b), a minimum sentence for CSC-3 (assuming no habitual offender enhancements apply, see MCL 769.10 through MCL 769.12) cannot exceed 10 years' imprisonment. And it would hardly seem that if defendant had actually been convicted of CSC-3, a sentence of 10 to 15 years' imprisonment would have been permissible under *Milbourn*. See *Milbourn*, 435 Mich at 654 ("Where a given case does not present a combination of circumstances placing the offender in either the most serious . . . class with respect to the particular crime, then the trial court is not justified in imposing the maximum . . . penalty . . . .").

unless a jury decides that the offender premeditated the killing.[5] MCL 777.36. Given that the guidelines address and specifically account for an offender's intent to kill, the Court was "highly skeptical" of the ability of a sentencing court "to sentence a defendant convicted of second-degree murder as though the murder were premeditated." Further, the Court noted, even if an extra 25 points had been scored in that case, the defendant's recommended sentencing range would have remained unchanged. *Dixon-Bey*, 321 Mich App at 528.

Judge Rodgers assessed 25 points for OV 6, rejecting Schwander's claim that 10 points should have been scored because the death occurred in a "combative situation," see MCL 777.36(2)(b). *Schwander I*, unpub op at 2. This Court has affirmed that score. *Id*. Relying entirely on the information that was presented to the jury, Judge Rodgers determined that Schwander had premeditated the murder and sentenced him consistently with that conclusion. As explained in *Dixon-Bey*, this contravened the letter and spirit of MCL 777.36(2)(a).

In a homicide case, the plain language of OV 6 bars judicial fact-finding in calculating the guidelines applicable to intent. By precluding judicial fact-finding concerning intent, the Legislature signaled that a court could not rely on its disagreement with a verdict to increase a defendant's minimum guidelines range. In other words, OV 6 represents a legislative determination that a jury's verdict *alone* controls the guidelines' sentence calculation. Permitting a court to use forbidden facts to depart from the guidelines undermines clearly expressed legislative will.[6]

For several other reasons we reject that Judge Rodgers's finding that Schwander intended to kill the victim could justify the substantial departure sentence imposed.

Just as in *Dixon-Bey*, even were it appropriate to add 25 points to Schwander's OV score, his minimum sentence range would remain unchanged. Because the guidelines fully account for this aspect of the offense and the offender, Judge Rodgers abused his discretion by relying on his own finding of intent to justify a departure.

Furthermore, we note that Schwander was 17 years old when he murdered the victim. *Schwander II*, unpub op at 1. In *Miller v Alabama*, 567 US 460, 471; 132 S Ct 2455; 183 L Ed

---

[5] "Unless the sentencing court has information that was not presented to the jury, an offender's OV 6 score must be consistent with a jury verdict." MCL 777.36(2)(a). The sentencing court had no such additional information here or in *Dixon-Bey*.

[6] With regard to this offense variable, Michigan's sentencing guidelines scheme differs from the federal system, which permits such judicial fact-finding. See *United States v Hebert*, 813 F3d 551, 564 (CA 5, 2015) ("[W]e have held that courts can engage in judicial factfinding where the defendant's sentence ultimately falls within the statutory maximum term. Following *Booker*, we noted that '[t]he sentencing judge is [still] entitled to find by a preponderance of the evidence all the facts relevant to the determination of a Guideline sentencing range and all facts relevant to the determination of a non-Guidelines sentence.' *United States v Mares*, 402 F3d 511, 519 (CA 5, 2005)".)

2d 407 (2012), the United States Supreme Court held that mandatory life-without-parole sentences for minors are unconstitutional under the Eighth Amendment, resting this conclusion on the principle that "children are constitutionally different from adults for purposes of sentencing." The Supreme Court explained that children have "diminished culpability and greater prospects for reform," lack maturity and have not fully developed a sense of responsibility, "leading to recklessness, impulsivity, and heedless risk-taking[,]"are vulnerable to negative influences, and, among other factors, are less able to assess the consequences of their actions. *Id*. at 471-472 (quotation marks and citations omitted). The Court ultimately found *mandatory* sentences of life without parole for juveniles to violate the Eighth Amendment. *Id*. at 479. However, the Court left open the possibility of the imposition of a sentence of life without parole for the "rare juvenile offender whose crime reflects irreparable corruption." *Id*. at 479-480 (quotation marks and citation omitted). But before imposing such a sentence, a trial court must "take into account how children are different, and how those differences counsel against irrevocably sentencing them to a lifetime in prison." *Id*. at 480.

In response to *Miller*, our Legislature enacted MCL 769.25. Under this statute, if an individual under age 18 commits first-degree murder, a prosecutor may choose to seek a life-without-parole sentence via motion. MCL 769.25(1)(a), (2)(b), and (3). If no motion is filed, the individual must be sentenced "to a term of imprisonment for which the maximum term shall not be less than 60 years and the minimum term shall not be less than 25 years or more than 40 years." MCL 769.25(4) and (9). In other words, had the jury in the present matter believed the prosecutor's theory and concluded that Schwander committed first-degree murder, likely he would have received, *at most,* a 40-year minimum sentence under MCL 769.25(9). We find it unreasonable and disproportionate to sentence Schwander to the same minimum term for a conviction of *second*-degree murder.

We are left with only a handful of legitimate reasons justifying Judge Rodgers's departure sentence, none of which were tethered to an explanation of why a minimum sentence exceeding the guidelines maximum (22½ years) by 17½ years was imposed. While we agree that a departure may have been warranted based on Schwander's lack of remorse, his relationship to the victim's family, his failure to summon help for the victim, or his treatment of the victim's body after her death, Judge Rodgers failed to explain how the extent of the departure corresponded to these facts. For this reason, we must remand for another resentencing consistent with this opinion.

Because Judge Rodgers has retired, we anticipate that the resentencing will be conducted by his successor. We further anticipate that the 2011 PSIR used at Schwander's previous sentencings will be updated. See *People v Triplett*, 407 Mich 510, 515; 287 NW2d 165 (1980). New information may yield additional reasons for a departure, or may nullify or weaken the grounds found by Judge Rodgers. Given that Schwander is now almost 25 years old, we anticipate that the trial court will have an opportunity to assess both the positive and negative aspects of his character, consistent with *Milbourn*, in addition to considering the circumstances of the crime.

We vacate Schwander's sentence and remand for resentencing in conformity with this opinion.  We do not retain jurisdiction.


/s/ Elizabeth L. Gleicher
/s/ Deborah A. Servitto